539 P.2d 544

Bert OWENS, Chairman, Marvin Rohrer and John Pruitt, The Board of Supervisors of Yavapai County, Arizona, a body politic, David Jenner, Chairman, on behalf of the Members of the Planning and Zoning Commission of Yavapai County, Arizona, Appellants,

v.

The GLENARM LAND COMPANY, INC., an Arizona Corporation, Appellee.

No. 1 CA–CIV 2453.

Court of Appeals of Arizona,
Division 1,
Department A.

Aug. 26, 1975.

Rehearing Denied Sept. 29, 1975.

Review Denied Jan. 13, 1976.

G. Eugene Neil, Yavapai County Atty. by Stan A. Lehman, Prescott, for appellants.

Law Offices of George M. Ireland, P. C. by George M. Ireland, Prescott, for appellee.

## OPINION

HAIRE, Chief Judge, Division 1.

On this appeal we are required to determine whether the appellant County Board of Supervisors had the authority to require proof of the *availability* of domestic water as a condition to the approval of appellee's proposed subdivision plat. The trial judge held that it did not have such authority, and we agree.

On September 13, 1972, the appellant Board of Supervisors of Yavapai County, acting on the recommendation of its County Planning and Zoning Commission, denied approval of a proposed subdivision plat of the appellee, Glenarm Land Company, Inc. From the action of the Board of Supervisors, the Glenarm Land Company sought review in the Superior Court of Yavapai County by way of a petition for special action. In the special action peti-

tion Glenarm asked the Court to order the Board of Supervisors to approve its subdivision plat. The trial judge found that Glenarm had complied with all the then existing requirements for a subdivision plat, and that the Board of Supervisors did not have authority to require a further proof from Glenarm of the future availability of water for the proposed subdivision. It therefore ordered the Board to approve Glenarm's subdivision plats.

■ Initially, we note that there is no particular statutory provision for the review of an adverse decision of a County Board of Supervisors denying approval of a subdivision plat.[1] The provisions of the Administrative Review Act, A.R.S. § 12–901 et seq., would not be applicable inasmuch as the county is not an "agency" within the purview of that Act. As previously stated, Glenarm sought review in the Superior Court by way of a special action petition. Neither party questions the availability of that method of review, and we consider it appropriate. *See Rubi v. 49'er Country Club Estates, Inc.,* 7 Ariz. App. 408, 440 P.2d 44 (1968); *City of Phoenix v. Superior Court, County of Maricopa,* 110 Ariz. 155, 515 P.2d 1175 (1973).

In its special action petition, Glenarm advanced essentially two contentions:

(1) That the Board of Supervisors lacked authority to deny approval of a subdivision plat based upon its determination that sufficient water was not available to meet existing needs and those of the proposed subdivision; and

(2) That, assuming the existence of such authority, the Board acted in an arbitrary and capricious manner.

At the special action hearing, after taking evidence relating primarily to the introduction of the records and proceedings before the appellant Board and the Planning and Zoning Commission, the trial

1. *Cf.* A.R.S. § 11–807D, concerning County Boards of Adjustments, which provides:
"D. Any person aggrieved in any manner by an action of a board of adjustment may within thirty days appeal to the superior court, and the matter shall be heard *de novo* as appeals from courts of justices of the peace."

judge ruled as a matter of law that the Board lacked the authority to require a showing of the existence of an adequate water supply.

On appeal, the appellants first contend that the trial judge erred in failing to grant a trial *de novo* in the special action proceeding. This contention might have some relevance if the trial judge had reached the merits of the availability of water question. However, such was not the case. As a preliminary legal question the trial judge decided that the Board did not have such authority and thus did not reach the merits. In view of our decision, we need not decide whether appellants would have been entitled to a trial *de novo* on the merits of the water availability question.

■ As an additional twist on the trial *de novo* questions, appellants appear to be contending that they should have been allowed to show other bases for the denial of the subdivision plat. We do not agree. A.R.S. § 11–806.01 C requires that:

"The ground of refusal or approval of any plat submitted, including citation of or reference to the rule or regulation violated by the plat, shall be stated upon the record of the board."

The trial judge specifically found that the Board of Supervisors' rejection of the application of appellee was based upon the question of availability of water for the proposed subdivision. The record fully supports this finding. To allow the Board to assert and present evidence on appeal relating to other previously unstated alleged deficiencies would be to entirely thwart the obvious intent of the statute. We hold that the trial judge did not err in restricting the special action proceeding to the ground of refusal stated by the Board in its records.

Turning now to a determination of whether the trial judge erred in his ruling that the Board lacked the authority to require a showing of an adequate water supply, we are not faced with the question of whether the Board of Supervisors could enact an ordinance dealing with the availability of water for residential purposes in the exercise of its powers pursuant to A.R.S. § 11–802. Our inquiry is much narrower. The question posed here is whether the Board can impose such a requirement as a pre-condition *to the approval of a subdivision plat.*

■ The County's power to approve or disapprove subdivision plats is found in A.R.S. § 11–806.01, and any power which it possesses in this regard is derived from that section.[2] While § 11–806.01 D, relating to the adoption of rules and regula-

2. A.R.S. § 11–806.01 provides:
"A. No plat of a subdivision of land within the area of jurisdiction of such county shall be accepted for recording or recorded until it has been approved by the board. The approval of the board shall be endorsed in writing on the plat. Where a county planning and zoning commission exists, the plat shall first have been referred to such commission for its consideration and the board shall have received the recommendation of the commission.
"B. Any person causing a final plat to be recorded without first submitting the plat and obtaining approval of the board shall be guilty of a misdemeanor. No county recorder shall accept for recording or record any plat which has not been approved as provided by this article.
"C. The ground of refusal or approval of any plat submitted, including citation of or reference to the rule or regulation violated by the plat, shall be stated upon the record of the board.
"D. The commission may recommend to the board and the board may adopt general rules and regulations of uniform application governing plats and subdivisions of land within its area of jurisdiction. The regulations adopted shall secure and provide for the proper arrangement of streets or other highways in relation to existing or planned streets or highways or to the official map for adequate and convenient open spaces for traffic, utilities, drainage, access of fire fighting apparatus, recreation, light and air. The general rules and regulations may provide for the modification thereof by the commission in planned area development or specific cases where unusual topographical or other exceptional conditions may require such action. The regulations shall include provisions as to the extent

tions, is expressed in the permissive "may", it is our opinion that the enactment of such rules and regulations by the county is a mandatory prerequisite to the exercise by it of its subdivision plat approval powers. We reach this conclusion by reason of the fact that subsection C of § 11–806.01 mandatorily requires that any ground of refusal include a ". . . reference to the rule or regulation violated by the plat. . ..", a provision which the Board would find rather difficult to comply with in the absence of such rules and regulations.

▪ A.R.S. § 11–806.01 D provides, in part, that the regulation shall ". . . include provisions as to the extent . . . to which water . . . utility mains, piping or other facilities shall be installed or provided for on the plat as a condition precedent to the approval of the final plat." In our opinion this statutory provision does not grant to the county the authority to inquire into the availability of water, but even if we were to assume that it did grant such authority, the county has not brought to this Court's attention any regulation or ordinance adopted by it setting standards for the exercise of that authority.[3]

In conclusion, we note that in 1973 the Arizona Legislature adopted legislation requiring the subdivider/developer, prior to the recording of the subdivision plat, to submit the plat to the Arizona Water Commission and demonstrate to that Commission the adequacy of the proposed water supply.[4] Also, see A.R.S. § 32–2181 D, re-

---

to which streets and other highways shall be graded and improved and to which water, sewer, or other utility mains, piping or other facilities shall be installed or provided for on the plat as a condition precedent to the approval of the final plat.

"E. Boards of supervisors of counties may prepare specifications and make orders, inspections, examinations and certificates as may be necessary to protect and complete the provisions and make them effective.

"F. Before adoption of rules and regulations by the board or any amendment thereof as provided in this article, a public hearing shall be held by the commission. A copy of the rules and regulations shall be certified by the commission to the county board of supervisors which shall hold a public hearing after notice of time and place has been given by one publication fifteen days prior to the public hearing in a newspaper of general circulation in the county.

"G. Approval of a plat shall not be deemed to constitute or effect an acceptance by the county for designation of any street, highway or other way or open space shown upon the plat into the county maintenance system. However, at such time as the streets, highways or other ways are fully completed in accordance with the approved plat and written specifications made by the county board, the county must accept said streets, highways and other ways into the county maintenance system within one year of completion."

3. Section 108 L. 2. of the Yavapai County Planning and Zoning Ordinance (1968) dealing with the approval of subdivision plats merely provides:

"2. SUBDIVISION PLAT APPROVAL: The subdivision of land into more than four lots shall be contingent upon the recording of an approved subdivision plat, the feature of which shall conform to the provisions of this Ordinance (except as may provide minor deviations not adverse to the intent thereof). Such plat shall first be submitted to the Commission for review and recommendations; approval shall be withheld (until acceptable corrections are made) if determined not suitable due to such features as flooding or poor drainage, steep slopes, rock problems, sanitary deficiencies, poor design, improper access to public roadway, or other conditions likely to affect public health, safety, convenience and general welfare."

4. A.R.S. § 45–513 provides:

"A. The developer of a proposed subdivision including dry lot subdivisions, regardless of subdivided lot size, prior to recordation of the plat, shall submit plans for the water supply for the subdivision and demonstrate the adequacy thereof to meet the needs projected by the developer to the Arizona water commission. The Arizona water commission shall evaluate the plans and issue a report thereon. The Arizona water commission may designate service areas where an adequate water supply exists by reporting such designation to the water department of the city or town or private water company and the state real estate commissioner. A developer shall not be required to submit plans for the water supply in such service areas. The Arizona water commission may revoke such designation when it finds that the water supply may become inadequate.

quiring promotional material to adequately display the Arizona Water Commission's Report.

In summary, in the case before us we find no authority which would authorize the appellant Board of Supervisors to inquire into the question of the availability of water as a condition to the approval of a subdivision plat. The judgment entered by the trial court is affirmed.

FROEB, J., concurs.

DONOFRIO, Judge (specially concurring).

I agree with the majority opinion in its affirmance of the trial court on all the issues raised, but I cannot agree to that part of the opinion which either states or implies that we must look only to A.R.S. § 11–806.01 to find authority in the County Board of Supervisors to require proof of availability of domestic water as a condition precedent to the approval of a subdivision plat. I can find no wording that could be interpreted to that effect. Subsection D of the statute only grants the Board power to promulgate regulations regarding the facilities or means, such as piping, etc., by which the distribution of water is conducted rather than on the subject of the availability of the water. The pertinent wording of the subsection reads as follows:

". . . The regulations shall include provisions as to the extent to which streets and other highways shall be graded and improved and to which water, sewer, or other utility mains, piping or other facilities shall be installed or provided for on the plat as a condition precedent to the approval of the final plat."

"B. The Arizona water commission shall evaluate the proposed source of water for the subdivision to determine its ability to meet proposed uses for a period of years commensurate with normal practices in other areas of the state and forward a copy of such

As I see it, we must look to other statutes. The powers and duties of the several County Boards of Supervisors are set out in various statutory sections, including A.R.S. § 11–251 (General Powers), § 11–802 (County Planning and Zoning), and § 11–806.01 (Subdivision Platting). A.R.S. § 11–802 states that the Board shall plan and provide for the future growth and improvement of its area of supervision by way of regulations and ordinances covering zoning and subdivision platting, ". . . in order to conserve and promote the public health, safety, convenience and general welfare . . . ." In my opinion this section, together with the others mentioned, do give by implication the legal authority to the County Board of Supervisors to enact an ordinance providing for proof of availability of water before approval of a proposed subdivision. County supervisors possess only powers expressly conferred by statute or necessarily implied therefrom. See Ricca v. Bojorquez, 13 Ariz.App. 10, 473 P.2d 812 (1970); Board of Supervisors of Apache County v. Udall, 38 Ariz. 497, 1 P.2d 343 (1931); Maricopa County v. Southern Pacific Co., 63 Ariz. 342, 162 P.2d 619 (1945); Peters v. Frye, 71 Ariz. 30, 223 P.2d 176 (1950). It is also true that implied powers of county boards of supervisors do not exist independently of the legislative grant of express powers, because the only function of an implied power is to aid in carrying into effect a power expressly granted. Associated Dairy Products Co. v. Page, 68 Ariz. 393, 206 P.2d 1041 (1949). In the instant case we must agree with appellant that due to the uniqueness and critical need for water in the State of Arizona it is implied that the Board may enact an ordinance requiring proof of availability of water in furtherance of its duty to conserve and promote

evaluation to the state real estate commissioner.

"C. The state of Arizona and the Arizona water commission shall not be liable for any report, designation or evaluation prepared in good faith pursuant to this section."

the public health, safety, and general welfare, an express legal power of the Board.

My position is that under the law the Board can enact an ordinance or regulation requiring proof of availability of water before approval of a subdivision and that in the instant case there is no presently existing regulation or ordinance providing a standard by which to determine if Glenarm had in fact proved the availability of adequate water for its subdivision. I would hold that because there is an absence of a specific standard provided in an enactment, the action of the Board of Supervisors in denying approval of the subdivision plat was arbitrary and unreasonable.

As to the remaining issues, I am compelled to agree with the trial court that there is ample evidence in the record to show that Glenarm had complied with all then-existing requirements.