477 P.2d 758

ARIZONA FOUNDATION FOR NEUROLOGY & PSYCHIATRY, an Arizona corporation, dba Camelback Hospital, Phoenix Institute of Neurology & Psychiatry, an Ariz. corp., Board of Adjustment No. 1 of the City of Phoenix, Burton M. Apker, Mrs. Julius Citron, Ward J. Derks, Robert A. Shepler, James P. Hussey, George Walsh and Frank Kadish, individually and as Members of Board of Adjustment No. 1, Appellants,

v.

M. J. SIENERTH, Superintendent of Building Inspections of the City of Phoenix, Arizona, East Camelback Homeowners Association, an Arizona corporation, Richard W. Peay and Jerry Hirshberg, Appellees.

1 CA–CIV 782.

Court of Appeals of Arizona,
Division 1,
Department A.
Dec. 14, 1970.

Burch, Cracchiolo, Levie & Guyer, by Frank Haze Burch and C. Michael Pierce, Phoenix, for appellants.

Edward P. Reeder, Asst. City Atty., Phoenix, for Board of Adjustment No. 1 and its Members.

Johnson, Shelley, Roberts & Riggs, by J. LaMar Shelley, Mesa, for M. J. Sienerth.

Dushoff, Sacks & Corcoran, by Jay Dushoff and Stephen L. Weiss, Phoenix, for East Camelback Homeowners A'ssn.

DONOFRIO, Presiding Judge.

This is an appeal from a judgment of the Maricopa County Superior Court which reversed a decision in favor of the appellants made by the Board of Adjustment No. 1 of the City of Phoenix.

For convenience, appellee M. J. Sienerth, the Superintendent of Building Inspections for the City of Phoenix, will hereafter be referred to as Sienerth. Appellee East Camelback Homeowners Association will be referred to as the homeowners and appellant Arizona Foundation for Neurology will be called Camelback Hospital. The Board of Adjustment No. 1 will at times be referred to as the Board.

Sienerth and the homeowners were petitioners in two certiorari actions brought in the Superior Court pursuant to A.R.S. § 9–465, subsec. E to review the Board's decision in Case No. 529–66. In the trial court proceedings Sienerth, whose division of building inspections had, on September 26, 1966, refused to issue Camelback Hospital a building permit to cover expansion of its physical plant, maintained the position that the hospital was first required to obtain a use permit from the Board before a building permit could be issued. The Board's decision after rehearing was rendered May 16, 1967, and corrected June 7, 1967. By a four to one margin the Board decided that a use permit was not required. The Superior Court having found that the

basis of the Board's decision was an erroneous interpretation of certain sections of the Phoenix Zoning Ordinance concluded, inter alia, that as a matter of law Camelback Hospital was required to obtain a use permit from the Board prior to the enlargement or extension of its facilities.

The issue we are called upon to decide is whether under the ordinance acquisition by the appellant of a use permit was a prerequisite to its obtaining a building permit for its planned construction.

The first buildings of what is now Camelback Hospital were constructed in 1954 and 1955 in Maricopa County pursuant to use and building permits issued by the County. In 1958 the area occupied by Camelback Hospital was annexed to the City of Phoenix and in 1959 the Phoenix City Council gave the appellants' property its present zoning classification. Under this classification, one-hundred-foot strips lying within the southern and western boundaries, and one-hundred-fifty-foot strips lying within the northern and eastern boundaries of the subject property were zoned R–1 (limited to single-family residences). The balance of the property, the interior portion, was zoned R–5, a "multiple-family residence, general district" under Section 411 of the Phoenix Zoning Ordinance.

Ordinance No. G–449, referred to herein as the Phoenix Zoning Ordinance, was adopted by the City of Phoenix on December 28, 1961, and made effective January 2, 1962. Appellants and appellees are in agreement as to which sections of this ordinance as it stood prior to amendment are relevant in this appeal. We set forth the three pertinent sections:

§ 411(a) (4) allowed, subject to a use permit, uses of the character of appellants:

"Section 411, Residential R–5 District-Multi-Family Residence, General.

    \*    \*    \*    \*    \*    \*

"(a) Permitted uses.

    \*    \*    \*    \*    \*    \*

"(4). Hospitals and nursing homes, subject to a use permit. When any hospital or nursing home is used for the treatment and/or care of mental diseases, contagious diseases or alcoholic patients, the building shall be not less than one hundred (100) feet from any side or rear property line."

§ 107(b) (1) allowed for the continuance of uses established prior to annexation:

"§ 107. Enforcement.

    \*    \*    \*    \*    \*    \*

"(b) Use permits.

"1. No building or land shall be used where a use permit is specifically required by the terms of this ordinance until a use permit for such use shall have been granted by the board of adjustment. Any use lawfully established prior to enactment of this ordinance or prior to annexation, which use is permitted by this ordinance subject to a use permit, shall be considered as being legally established."

§ 106(d) governed expansion:

"§ 106. Nonconforming uses.

    \*    \*    \*    \*    \*    \*

"(d) The physical plant, buildings and land devoted to any use which is permitted under the terms of this ordinance, subject to the securing of a use permit, may be enlarged or extended only after securing a new use permit."

In issue is the effect of these provisions, taken as a whole, on the appellants' property.

While this case was pending in the trial court, the Phoenix Zoning Ordinance was amended by the adoption of Ordinance G–797. It is apparent from the provisions of the amended sections that they were aimed at uses which parallel that of Camelback Hospital. Appellants, in their briefs, concede that if the amended ordinance is to apply to Camelback Hospital, it could not expand without first obtaining a use permit. It is not, however, conceded that the amended ordinance does apply, and therefore that issue remains before us.

■ We shall first turn to a consideration of the parties' positions in light of the

ordinance as it stood prior to amendment. The parties agree on these three points: (1) that Camelback Hospital was, in the words of § 106(d), a "use which is permitted under the terms of this ordinance * * *"; (2) that Camelback Hospital did not obtain an original use permit from the City of Phoenix; and (3) that the hospital is exempt from the requirement of obtaining an original use permit by reason of the second sentence of § 107(b) (1). At that point the agreement ends as appellees, agreeing that Camelback Hospital can continue to function without a use permit, contend that an expansion is conditioned upon the securing of a use permit. This position is based upon an interpretation of § 106(d) as applying to uses in the position of appellants. Thus, although under § 107(b) (1) Camelback Hospital is a "legally established" use, and although the heading of § 106 reads "Nonconforming uses", the appellees and the trial court took the view that under § 106(d) Camelback Hospital which, as noted, was exempted from obtaining an original use permit was required to obtain a use permit prior to undertaking its physical expansion. We agree.

According to the appellants' interpretation of § 106(d) the scope of that subsection's coverage is restricted to nonconforming uses. The language in question makes § 106(d) applicable to *"any use* which is *permitted under* the terms of *this ordinance."* (emphasis supplied). Given this language, we believe that it would be a strained interpretation to hold that this subsection applies only to nonconforming uses.

■ Ordinances, which in a sense are "local statutes" are to be construed by the same rules that govern construction of statutes. 6 E. McQuillin, Municipal Corporations § 20.39 (3rd ed. rev. vol. 1969). Regarding construction of section headings in the Arizona Revised Statutes, § 1–212 provides:

"* * * headings to sections * * * are supplied for the purpose of convenient reference and do not constitute part of the law."

As to an ordinance, a similar rule has developed that resort to its title as an aid in determining the correct interpretation will be allowed:

"* * * where the intent is not plain; for where the mind labors to discover the intention of the legislature it seizes everything, even the title, from which aid can be derived." 6 E. McQuillin, supra, § 20.59 at p. 156.

Were the language of § 106(d) not clear it would then be appropriate to look to the heading of § 106 as an aid, although only a limited aid, in clarifying an ambiguity. Garrison v. Luke, 52 Ariz. 50, 78 P.2d 1120 (1938). We believe, however, that the language of § 106(d) was plain, thus obviating a need to consider the heading of § 106 in arriving at the proper construction of subsection (d) thereof.

■■ Administrative interpretation of a statute should be accorded some weight in arriving at its proper interpretation, and while administrative interpretation is not binding, where it is long continued and the language in question is ambiguous, the court should acquiesce in such administrative interpretation. City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964). In the cases cited by appellants for this proposition, City of Mesa v. Killingsworth, supra; Jenney Freight Line v. Arizona Express, Inc., 89 Ariz. 343, 362 P.2d 664 (1961); Long v. Dick, 87 Ariz. 25, 347 P.2d 581 (1959), there was an administrative practice of long standing and uniform interpretation of the statute involved, whereas in the present case the record shows that although four building permits were issued to Camelback Hospital between the period of annexation and commencement of this suit, three of those involved permits which the City agreed would not require a use permit. From these facts it is obvious that we cannot, for construction purposes, find significant precedent in the administrative interpretation of these sections of the ordinance.

Apart from the question whether Camelback Hospital was bound by the amended ordinance is a consideration of what weight and effect should be given the City Council's amendment of the Phoenix Zoning Ordinance in relation to interpreting the ordinance as it stood prior to its amendment. The Arizona Supreme Court has held that an amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. City of Mesa v. Killingsworth, supra. In General Petroleum Corp. of Cal. v. Smith, 62 Ariz. 239, 157 P.2d 356 (1945), the court said:

" * * * The rule seems to be well established that the interpretation of a statute by the legislative department goes far to remove doubt as to the meaning of the law. The court has the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation. 50 Am.Jur. 328, sec. 337, title 'Statutes.' " 62 Ariz. at 247, 248, 157 P.2d at 360.

■ The same rule applies in the construction of ordinances. 6 E. McQuillin, Municipal Corporations § 20.62 (3rd ed. rev. vol. 1969). Appellants have cited two Arizona cases which they contend support their position that there is a presumption which attends such an amendment, i. e., that it was intended to change rather than clarify the ordinance. Woolsey v. Lassen, 91 Ariz. 229, 371 P.2d 587 (1962); Trump v. Badet, 84 Ariz. 319, 327 P.2d 1001 (1958). Both cases, which are factually distinguishable from the case at bar, make clear, however, that such a presumption is to be allowed only where the statute amended admitted of no ambiguity prior to amendment. While we do not take the position that the pertinent sections of the ordinance were ambiguous prior to amendment, appellants, in advancing various rules of construction, have premised their arguments on the ambiguity of the ordinance's language. Thus, in arguing the rule advanced in Trump and Woolsey appellants are forced to take an inconsistent view of the ordinance.

The amending ordinance, Ordinance No. G–797, enacted in 1967 while this case was pending, made the following significant changes:

(1) Deleted paragraph (d) from § 106.
(2) Deleted paragraph (b) from § 107 and added in its place a new paragraph (B), relating to entirely different matters.
(3) Added § 110(B) which makes it clear that the uses covered by the second sentence of unamended § 107(b) (1) must obtain a use permit prior to enlarging.
(4) Added § 110(J) which states that any use permitted under the terms of the ordinance subject to the securing of a use permit may expand or enlarge only after securing a use permit.
(5) Added, in § 102(B), the provision that section headings are to be used only for convenience in arrangement.

These amendments strongly reinforce the appellees' interpretation of the ordinance as it stood before amendment.

Having determined that appellants were required, under the unamended ordinance, to obtain a use permit prior to enlarging the hospital, we find it unnecessary for the disposition of the appeal to consider whether the amended ordinance could have been applied to the appellants.

[6] One further argument made by appellants merits some discussion. They assert that A.R.S. § 9–462, subsec. B should be interpreted so as not to require the hospital to obtain a use permit prior to expanding its physical plant. A.R.S. § 9–462, subsec. B reads:

"B. Nothing in an ordinance or regulation authorized by this section shall affect existing property or the right to its continued use for the purpose used at the time the ordinance or regulation takes effect, nor to any reasonable repairs or alterations in buildings or

property used for such existing purpose."

It seems clear that the statute was enacted to protect the rights of property owners whose property remains unchanged after a zoning ordinance is enacted which ordinance would make such property a nonconforming use. Thus, were appellants here applying for a building permit to cover solely alterations and repairs as opposed to alterations coupled with physical expansion, the City could not condition such permit upon appellants' obtaining a use permit. With this the appellees agree.

For the purpose of the question before us, the critical words in A.R.S. § 9–462, subsec. B are "reasonable repairs or alterations" and in § 106(d) were "enlarged or extended".

In Merriam-Webster's New International Dictionary (3rd ed. 1965) these words are defined as follows:

Repair:

"1 a: to restore by replacing a part or putting ·together what is torn or broken * * *"

Alteration:

"2 d: a change or modification made on a building that does not increase its exterior dimensions * * *"

Enlarge:

"1 a: to make larger: increase in quantity or dimensions: extend in limits * * *"

Extend:

"* * * 6 a: to cause to be of greater area or volume * * *: increase the size of: ENLARGE: make greater in extent * * *"

From these definitions it is evident that the words "repair" and "alteration" do not contemplate a physical expansion as do the words "enlarge" and "extend".

§ 106(d) did not limit appellants' right to its continued use, unchanged in character, at the time the ordinance took effect. Nor did § 106(d) attempt to limit uses of appellants' character in making

"reasonable repairs or alterations in buildings or property." § 106(d) was instead directed at expansion of existing property. Thus, it is our position that the language of the statute is clearly aimed at something different from that which the language of the ordinance was meant to control. There being no conflict between the statute and the ordinance, it is our position that the provisions of A.R.S. § 9–462, subsec. B have no application to the disposition of this appeal.

Affirmed.

STEVENS and CAMERON, JJ., concur.