768 P.2d 191

**GANNETT OUTDOOR COMPANY OF ARIZONA, a Delaware corporation, Plaintiff–Appellee,**

v.

**CITY OF MESA, a political subdivision of the State of Arizona, and Board of Adjustment of the City of Mesa, Defendants–Appellants.**

No. 1 CA–CIV 9928.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 12, 1989.

Reconsideration Denied Feb. 23, 1989.

---

2. *See supra* note 1.

3. A.R.S. § 36–445.01(A)

Eaton, Lazarus & Dodge, Ltd. by Paul F. Lazarus, Susan G. Sendrow, David K. Jones, Phoenix, for plaintiff-appellee.

Shelley & Bethea by J. LaMar Shelley, Mesa, for defendants-appellants.

## OPINION

CONTRERAS, Presiding Judge.

In this appeal, we consider the issue of whether the replacement of an existing multi-pole billboard structure with a new mono-pole structure of the same dimensions constitutes a "reasonable alteration" of non-conforming property within the meaning of A.R.S. § 9–462.02. We conclude that such a change in the structural support system of the billboard does not constitute a "reasonable alteration" within the meaning of the statute. Accordingly, we reverse the trial court's order requiring the City of Mesa to issue sign permits authorizing such structural change. We also remand the matter for entry of judgment in favor of appellants.

## FACTS AND PROCEDURAL HISTORY

The facts essential to determination of this litigation are not in dispute. Prior to 1986, Gannett Outdoor Company of Arizona (Gannett) had established a number of outdoor advertising billboards in various locations in Mesa. At the time the billboards were installed they were a permitted use under existing regulations.

In 1986, the city of Mesa adopted a new Sign Code which, as later amended, prohibited additional billboards within the city limits. The new code made billboards that were installed prior to the amendment legal nonconforming uses. In April of 1987, Gannett applied to Mesa for a sign permit to allow it to replace certain existing multi-pole billboard structures with mono-pole structures. Mesa refused to issue the permit.

Gannett then applied to the Board of Adjustment of the City of Mesa for an interpretation of the Mesa Sign Code to determine whether Gannett could replace its multi-pole structures with mono-pole structures. The section of the Mesa city code at issue is § 4-4-10(C)(2), which provides:

> A nonconforming sign structure shall not be re-erected, relocated or replaced unless it is brought in compliance with the requirements of this code.

Gannett contended that it was entitled to install the mono-pole structures pursuant to A.R.S. § 9-462.02 which precludes municipalities from prohibiting reasonable alterations to nonconforming property. The Board of Adjustment concluded that a complete replacement of an existing sign structure with a new structure was not a "reasonable alteration" protected under A.R.S. § 9-462.02, but rather, a replacement prohibited by the city code.

Gannett brought a special action in superior court from the decision of the Board of Adjustment. After oral argument, the trial court apparently concluded that a total replacement of the signs was not an alteration. The court also determined, however, that as long as the portion of the sign containing the advertising remains in place, a change in the support structure is not a total replacement. It ordered Mesa to issue sign permits allowing Gannett to replace the multi-pole structures so long as the portions of the billboards containing the advertising are not removed from their respective locations. The court held that such changes were reasonable alterations

pursuant to A.R.S. § 9-462.02. The court also awarded attorney's fees to Gannett pursuant to A.R.S. § 12-2030. The City of Mesa has appealed.

## STANDARD OF REVIEW

This civil appeal is brought from the superior court wherein a special action was filed seeking relief from the Board of Adjustment's decision. In this appeal, we are called on to review the actions taken by the Board, and in so doing, we are bound by the same standard of review as the superior court. *City of Phoenix v. Superior Court*, 110 Ariz. 155, 158, 515 P.2d 1175, 1178 (1973). Our review is limited to finding error. We may not substitute our opinion of the facts for the Board's, and if the evidence supports that decision, it should be affirmed. *Id.*

## DOES A.R.S. § 9-462.02 PROTECT REMOVAL OF A NONCONFORMING STRUCTURE AND REPLACEMENT WITH A NEW STRUCTURE?

All parties agree that Gannett's billboards are legal nonconforming uses. They also agree that municipal regulation of signs is subject to the state zoning statutes. *Levitz v. State*, 126 Ariz. 203, 205, 613 P.2d 1259, 1261 (S.Ct.1980). The heart of the disagreement is whether the replacement of an existing sign structure with a new structure is a reasonable alteration of nonconforming property.

Public policy favors the eventual elimination of nonconforming uses. This is implicit in § 9-462.02 and throughout the entire statutory scheme empowering Arizona cities and towns to employ zoning regulation for land use planning. *See* A.R.S. §§ 9-462 to -462.07 (1977). *See generally* 1 R. Anderson, *American Law of Zoning*, § 6.07 (3d. ed. 1986). *See also Mueller v. City of Phoenix*, 102 Ariz. 575, 583-87, 435 P.2d 472, 480-84 (1967) (Struckmeyer, J., dissenting). This goal, of course, can be achieved only within the statutory scheme.

■ A.R.S. § 9–462.02 [1] authorizes a municipality to purchase or condemn private property for the removal of nonconforming structures, but precludes a city from passing ordinances or regulations that prohibit nonconforming uses. The statute also precludes a city from prohibiting reasonable repairs or alterations of nonconforming uses. The purpose of statutes allowing nonconforming uses is to prevent the injustice of forcing retroactive compliance and the doubtful constitutionality of compelling immediate discontinuance of a nonconforming use. *Watanabe v. City of Phoenix,* 140 Ariz. 575, 578, 683 P.2d 1177, 1180 (App.1984); *Phoenix City Council v. Canyon Ford, Inc.,* 12 Ariz.App. 595, 598, 473 P.2d 797, 800 (1970).

Mesa argues on appeal that the public policy favoring the elimination of nonconforming uses is jeopardized if the term "reasonable repairs or alterations" as used in A.R.S. § 9–462.02 is interpreted to permit the complete destruction and replacement of existing nonconforming structures with entirely new structures that would perpetuate indefinitely the life of the nonconforming property. Mesa also argues that the property interest protected under A.R.S. § 9–462.02 is the investment already made by individuals in existing property rather than the right to make further investments in new property in furtherance of the nonconforming use.

Gannett's contention before the Board of Adjustment was that it was merely making a reasonable alteration to its existing billboards by completely removing them and replacing them as long as the new billboards did not expand the size or change the use of the billboard. It emphasized that the new billboards would be at the same height and would not increase the area of the sign face of the old billboards. It further emphasized that the new billboards would be aesthetic improvements.

Gannett's attorney offered to present evidence in the special action proceeding that the mono-pole structure had no greater life than the multi-pole structure. In any event, Gannett argues that A.R.S. § 9–462.02 expressly permits the perpetuation of nonconforming uses by permitting repairs or alterations, and limits the methods employed to terminate such uses to purchase and condemnation.

The meaning of the term "alteration" in A.R.S. § 9–462.02 has not been addressed in any Arizona appellate decision in the context in which it is raised in this litigation. However, in *Arizona Foundation for Neurology & Psychiatry v. Sienerth,* 13 Ariz.App. 472, 477 P.2d 758 (1970), this court had occasion to differentiate "repairs" and "alterations" permitted by the statute from "enlargements" and "extensions." The court concluded that a hospital, which was a nonconforming use, was exempt from obtaining original use permits or permits to repair or alter the buildings in existence when the zoning ordinance was passed. 13 Ariz.App. at 477, 477 P.2d at 763. However, the hospital was required to comply with the city ordinance requiring use permits when it sought to enlarge and extend its buildings. *Id.* In discussing A.R.S. § 9–462 as it then read, the court stated:

> It seems clear that the statute was enacted to protect the rights of property owners whose property remains unchanged after a zoning ordinance is enacted which ordinance would make such property a nonconforming use. Thus, were appellants here applying for a building permit to cover solely alterations and repairs as opposed to alterations coupled with physical expansion, the City could not condition such permit upon appellants' obtaining a use permit....

*Id.*

The court then relied upon dictionary definitions of the terms in question to conclude

1. A.R.S. § 9–462.02 provides:
    The municipality may acquire by purchase or condemnation private property for the removal of nonconforming uses and structures. The elimination of such nonconforming uses and structures in a zoned district is for a public purpose. Nothing in an ordinance or regulation authorized by this article shall affect existing property or the right to its continued use for the purpose used at the time the ordinance or regulation takes effect, nor to any reasonable repairs or alterations in buildings or property used for such existing purpose.

that "it is evident that the words 'repair' and 'alteration' do not contemplate a physical expansion as do the words 'enlarge' and 'extend.' " *Id.*

In the present case both parties rely on *Sienerth* to support their positions. Mesa relies on *Sienerth* to support its contention that the court intended to protect only property which "remains unchanged after a zoning ordinance is enacted." Mesa points out that if Gannett's present billboards are removed and replaced with new billboards, their property does not remain unchanged. Rather, it is argued, they have obtained entirely different structures. Gannett relies on *Sienerth* for the proposition that as long as it does not propose an expansion of the use or an increase in the exterior dimensions of its billboards, the substitution of the mono-pole structure is simply a repair or alteration.[2] We conclude that while *Sienerth* clearly excludes "enlargement" or "expansion" of existing buildings from the protections of A.R.S. § 9–462.02, it does not address the issue now before us.

There are cases from other jurisdictions addressing the permissibility of various changes made to nonconforming structures. *See generally* Annot., *Zoning; Changes, Repairs or Replacements in Continuation of Nonconforming Use*, 87 A.L.R. 2d 4 (1963); 1 R. Anderson, *supra*, at §§ 66.32–.59. It is clear, however, that resolution of the issues addressed in these cases is dependent upon the precise language of applicable statutes or ordinances. Therefore, with one exception, we find these cases to be inapposite.

In *Gagne v. Inhabitants of City of Lewiston*, 281 A.2d 579 (Me.1971), the Maine Supreme Court was asked to determine whether a municipal ordinance permitting a nonconforming use to be "enlarged or altered" permitted an owner to demolish an existing nonconforming building and erect an entirely new one.[3] The ordinance construed by the court provided in pertinent part:

> A building of non-conforming use may· be enlarged or altered ... provided the Board of Appeals shall rule that such ... alterations are not substantially more detrimental or more injurious to the neighborhood.

The Maine Supreme Court concluded that the words "enlarged" and "altered" did not describe the act of demolishing an existing building and erecting an entirely new one.

We now turn to the Mesa city ordinance at issue in this case. Section 4–4–10(C)(2) expressly prohibits the re-erection, relocation or replacement of a nonconforming sign unless it is brought into compliance with the code. This ordinance should be given effect unless it is in conflict with A.R.S. § 9–462.02 which permits "reasonable repairs and alterations" of nonconforming uses. Gannett does not assert that its proposed activity falls within the definition of "repairs." Thus, we are left to determine the ordinary meaning of the term "alteration."

In *Webster's New International Dictionary* (3d Ed.1966), we find the following definitions:

> Alter ... to cause to become different in some particular characteristic (as measure, dimension, course, arrangement, or inclination) without changing into something else ...
>
> Alteration ... 1a: the act or action of altering ... d: a change or modification made on a building that does not increase its exterior dimensions ...

---

**2.** However, Gannett's position on appeal is somewhat different than its position before the Board of Adjustment. On appeal Gannett is arguing to support the superior court's ruling which held that a portion of the billboard must remain in place during the substitution of the mono-pole structure for the multi-pole structure. Gannett argues that because the entire billboard is not being replaced at any one time, the use of the property is continuous. This issue was never presented to the Board of Adjustment. For reasons explained below, we find

it necessary to address the issue as it was presented to the Board, i.e., was a total replacement an alteration.

**3.** At that time, the Maine statute governing nonconforming uses differed from A.R.S. § 9–462.02 by expressly exempting "changes in structure" from its protection. Thus, the owner relied on the quoted ordinance as the basis for his right to replace his building.

These definitions presume the continued existence of the subject of the change or modification. Accordingly, we conclude that "alterations" cannot encompass the destruction of a billboard and the rebuilding of a new billboard. We agree with the Board of Adjustment and the trial court that such activity is a replacement prohibited by the Mesa Sign Ordinance. Thus, we find that in denying Gannett permits to erect new mono-pole billboards to replace its existing multi-pole billboards, the Board did not act in excess of its jurisdiction nor in abuse of its discretion.

## DID THE SUPERIOR COURT EXCEED ITS JURISDICTION?

The trial court did not find that the Board of Adjustment erred in refusing to grant a permit to Gannett to build new signs. However, the court ruled that so long as the words and pictures could be maintained in place, other portions of the sign, specifically the support structure, could be changed. The court stated that Gannett could use a crane to hold the advertising in place while the entire sign structure was being removed. The trial court concluded that this activity was a reasonable alteration of the billboard. It then directed the City of Mesa to issue sign permits allowing this procedure.

From our review of the record it is patently clear that the procedure suggested by the trial court was never presented to the Board of Adjustment by Gannett, nor was any evidence relating to that procedure presented to the trial court. The record reviewed by the trial court does not indicate that Gannett ever requested Mesa to issue permits for any type of partial reconstruction of its billboards. In fact, to the extent that Gannett suggested anything less than a total replacement of the sign, its request was made to the trial court rather than to the Board of Adjustment.

The superior court did not find that the Board of Adjustment acted in excess of its authority by denying Gannett the right to replace its entire billboard structures. The court did not find that the Board failed to exercise discretion or perform a duty which it was bound to exercise. Nor did it find that the Board acted in an arbitrary or capricious manner or abused its discretion. Rather, the trial court, seemingly on its own, devised a method by which Gannett could remove and replace portions of its billboards and directed Mesa to issue permits to allow the court's suggested procedure. We find that in so doing, the trial court exceeded its authority in the special action proceeding.

The City of Mesa and its Board of Adjustment have authority in the first instance to consider whether a proposed change to a nonconforming use is a "reasonable repair or alteration." If Gannett desired to achieve something less than a total replacement of its signs, it should have presented this alternative to the city, thereby providing the city with an opportunity to consider whether the proposed changes were reasonable under all the circumstances. Because the partial reconstruction alternative was not presented to the City of Mesa and its Board of Adjustment in the first instance, we must reverse the trial court's order.

The judgment of the trial court, including its award of attorney's fees, is reversed and this matter is remanded for entry of judgment in favor of the City of Mesa and the Board of Adjustment.

KLEINSCHMIDT and EUBANK, JJ., concur.