METRO MOBILE CTS, INC., et al.;
Metro Mobile CTS of Phoenix,
Inc., Plaintiffs–Appellants,

v.

NEWVECTOR COMMUNICATIONS,
INC., et al., and NewVector Retail
Service, Inc., Defendants–Appellees.

No. 87–2242.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1987.

Submission Vacated Jan. 27, 1988.

Resubmitted Sept. 7, 1989.

Decided Dec. 20, 1989.

W. Stephen Sockwell, Fleischman and Walsh, P.C., Washington, D.C., for plaintiffs-appellants.

James R. Martin, Mark Erich Weber, Gibson, Dunn & Crutcher, Los Angeles, Cal., Michael M. Grant, Johnston Maynard Grant & Parker, Phoenix, Ariz., for defendants-appellees.

Before NELSON, HALL and KOZINSKI, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Plaintiffs-appellants, Metro Mobile CTS, Inc., and Metro Mobile CTS of Phoenix, Inc., ("Metro Mobile") appeal the district court's decision to grant summary judgment in favor of defendants-appellees, NewVector Communications, Inc. and NewVector Retail Services, Inc., ("NewVector"). Metro Mobile's complaint alleged that throughout the period in which New-Vector enjoyed a "headstart" over its only other competitor (Metro Mobile) in the Phoenix market for wholesale cellular telephone service, it engaged in pricing and non-pricing conduct that constituted monopolization under section two of the Sherman Antitrust Act, 15 U.S.C. § 2 (1988). In an exhaustive opinion, *see Metro Mobile CTS v. NewVector Communications, Inc.,* 661 F.Supp. 1504 (D.Ariz.1987), the district court held that NewVector's pricing conduct was immune under the state action immunity doctrine and that, in any event, NewVector did not possess the requisite monopoly power to violate section two of the Sherman Act. We affirm on the latter basis.

**I.**

After conducting de novo review of the district court's grant of summary judgment, *see State Farm Fire & Cas. Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989), we agree with the district court that New-Vector lacked monopoly power during its headstart period, and adopt its analysis of

that issue. *See Metro Mobile,* 661 F.Supp. at 1521–25.

First, we agree with the district court that NewVector's 100% share of the wholesale market during the headstart period is insufficient to establish market power. "Blind reliance upon market share, divorced from commercial reality, [can] give a misleading picture of a firm's actual ability to control prices or exclude competition." *Hunt–Wesson Foods, Inc. v. Ragu Foods, Inc.,* 627 F.2d 919, 924 (9th Cir.1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). The commercial reality in this case is that the cellular telephone market in Phoenix is heavily regulated by the Federal Communications Commission (FCC) and the Arizona Corporation Commission (ACC). Reliance on statistical market share in cases involving regulated industries is at best a tricky enterprise and is downright folly where, as here, the predominant market share is the result of regulation.[1] In such cases, the court should focus directly on the regulated firm's ability to control prices or exclude competition. *Southern. Pac. Communications Co. v. A.T. & T.,* 740 F.2d 980, 1000 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985); *MCI Communications Corp. v. A.T. & T.,* 708 F.2d 1081, 1107 (7th Cir.), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983).

We further agree that NewVector lacked the power during the headstart period to exclude its only prospective competitor, Metro Mobile. The regulatory scheme imposed by the FCC and ACC required the non-wireline carrier to have sufficient financial backing to gain a foothold in the wholesale market. Metro Mobile met this requirement, facing no barriers to entry in the market. Moreover, the market's ability to support some 180,000 customers in the future virtually guaranteed Metro Mobile that foothold. By the end of the headstart period, over 95% of the potential market remained untapped. Because untapped potential provides a mouth-watering incentive for vigorous competition, it is axiomatic that monopoly power is unlikely to arise in dynamic industries marked by a rapidly expanding volume of demand and low barriers to entry. *See* J. von Kalinowski, 3 Antitrust Laws and Trade Regulation § 8.02[3] at 8–44 & nn. 82–83 (1989 & Supp. June, 1989); *see also* 2 P. Areeda & D. Turner, Antitrust Law ¶ 505 (1978) (footnote omitted) ("Substantial market power can persist only if there are significant and continuing barriers to entry.") Thus, we conclude that NewVector lacked the power to exclude its well-financed yet hungry competitor from the rapidly growing wholesale market.

We also agree that Metro Mobile's inevitable entry, coupled with price regulation by the ACC, further precluded NewVector from having the power to control prices. Once the FCC awarded the license to Metro Mobile in October 1984, NewVector had every reason to suspect Metro Mobile would shortly enter the market.[2] Because the barriers to entry were concededly low, it was virtually impossible for NewVector to exercise control over price for an extended time. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 591 n. 15, 106 S.Ct. 1348, 1358 n. 15, 89 L.Ed.2d 538 (1986). Even if NewVector were bold enough to attempt to control prices until Metro Mobile actually entered the wholesale market, the district court correctly noted that it was constrained from doing so by the ACC. *See Metro Mobile,* 661 F.Supp. at 1519–20, 1523.

## II.

The district court's excellent opinion also extensively explored the issue of whether the state action immunity doctrine shielded NewVector from liability for its alleged pricing and non-pricing misconduct. *Id.* at 1508–21. We do not rely on that portion of the opinion and decline to address the issue

---

**1.** As successor-in-interest to the traditional wireline carrier in the Phoenix area, NewVector was permitted to enter the market as the exclusive supplier of wholesale service while the FCC solicited bids for the non-wireline carrier license. *See Metro Mobile,* 661 F.Supp. at 1506–07.

**2.** Metro Mobile concedes that the sole reason for delaying its entry until March 1986 was its decision to redesign its cellular system.

anew. Because the record is clear that NewVector lacked the requisite monopoly power to support a section two claim, it is unnecessary to reach the issue of state action immunity.

### III.

For these reasons, the judgment of the district court is AFFIRMED.