803 P.2d 457

The **CIRCLE K CORPORATION, a Texas corporation, real party in interest; Maxicraft, Inc., an Arizona corporation, nominal party, Plaintiffs–Appellants,**

v.

The **CITY OF MESA, an Arizona municipal corporation; the City of Mesa Board of Adjustment, a governmental subdivision of the City of Mesa; John Freeman, Frank DeRosa, Darl J. Andersen, Terry Delley, Kay Tennison, Helen T. Stortz, Dick Woelkers, in their capacity as acting members of the City of Mesa Board of Adjustment; and Jay Addington, in his capacity as Superintendent of Building Inspections, Defendants–Appellees.**

No. 1 CA–CV 88–205.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 18, 1990.

Streich, Lang, Weeks & Cardon by Thomas R. Canham, Phoenix, for plaintiffs-appellants.

Shelley & Bethea by J. LaMar Shelley, Mesa, for defendants-appellees.

## OPINION

GRANT, Chief Judge.

This appeal concerns the validity of a Mesa zoning ordinance which requires the elimination or modification of a nonconforming sign as a condition to erecting a separate conforming sign on the same property. Appellants Circle K Corporation (Circle K) and Maxicraft, Inc. (Maxicraft) raise two challenges to the ordinance: 1)

whether the ordinance conflicts with A.R.S. § 9–462.02, and is therefore void; and 2) whether the ordinance allows an unconstitutional taking of private property without just compensation.

## FACTS

The facts pertinent to this appeal are undisputed. Circle K operates a convenience store in Mesa, Arizona. A twenty-foot high detached sign, displaying the Circle K logo, stands near the corner of the property. This sign conformed with the Mesa City Code in effect at the time the sign was erected. However, on October 6, 1986, the City of Mesa (Mesa) amended its code so that the height of detached signs was limited to twelve feet. Because the twenty-foot sign was erected prior to the amendment, it became a legal nonconforming sign. *See* Mesa, Az., Code § 4–4–5 (1986).

After the amendment, Circle K remodeled and upgraded the store. In connection with the remodeling, Maxicraft, acting on Circle K's behalf, applied for a sign permit to erect an additional logo and partially illuminated color band on the outside wall of the remodeled store. The proposed logo and color band comply with the current Mesa City Code. However, the application was denied on the basis of Mesa City Code § 4–4–12(D)(6), which reads:

> Sign permits for new or additional signs shall not be issued for a specific occupancy if such occupancy displays unlawful or nonconforming signs. A sign permit may be issued for a specific occupancy providing the terms thereof specify modification or removal of nonconforming signs resulting in conformity with the provisions of this Code.

Maxicraft then applied to the Mesa Board of Adjustment (the Board) for a variance to erect the logo and color band. The Board denied the request, finding that the code provision requiring that the nonconforming sign be brought into compliance was invoked by the property owner's voluntary remodeling, and did not abrogate Circle K's right to signage. The Board also reasoned that "granting the variance would

be contrary to the intent of the Sign Code to bring nonconforming signs into eventual compliance with current Code requirements." City of Mesa, Minutes of the Board of Adjustment (December 2, 1986).

Circle K sought review of the Board's action by filing a special action in superior court pursuant to A.R.S. § 9–462.06(K). Upon the parties' cross-motions for summary judgment, the trial court granted summary judgment in favor of Mesa. After its motion for a new trial was denied, Circle K brought this appeal, and raises two issues:

1) Whether the Mesa ordinance violates A.R.S. § 9–462.02; and

2) If not, whether requiring removal or modification of the nonconforming sign as a condition to granting the new sign permit amounts to an illegal exaction.

## A.R.S. § 9–462

1. Does the Mesa ordinance violate A.R.S. § 9–462.02?

Circle K argues that the Mesa ordinance which requires the elimination or modification of its nonconforming sign is void because it conflicts with A.R.S. § 9–462.02. That statute provides:

> The municipality may acquire by purchase or condemnation private property for the removal of nonconforming uses and structures. The elimination of such nonconforming uses and structures in a zoned district is for a public purpose. Nothing in an ordinance or regulation authorized by this article shall affect existing property or the right to its continued use for the purpose used at the time the ordinance or regulation takes effect, nor to any reasonable repairs or alterations in buildings or property used for such existing purpose.

Circle K argues that the ordinance results in the removal of nonconforming signs without compensation. The purpose of § 9–462.02, it contends, is to protect the rights of owners whose property remains unchanged after it acquires status as a nonconforming use. The only methods by which municipalities can remove nonconforming uses and structures are by pur-

chase or condemnation. Circle K argues that the nonconforming use in this case is the detached sign alone. Therefore, the addition of the attached conforming sign to another part of the premises is not an expansion or change to the nonconforming use. Because there is no change to the nonconforming use, this use should continue under A.R.S. § 9–462.02. Mesa's attempt to change the nonconforming sign by a method other than purchase or condemnation violates § 9–462.02.

In support of the ordinance, Mesa contends that acquisition by purchase or condemnation as set forth in A.R.S. § 9–462.02 is permissive, and is simply one way of eliminating nonconforming uses. The ordinance merely provides another. Mesa argues that because the nonconforming detached sign advertises the store, it is an integral part of the business, and therefore, the entire store, including signs, is the existing property. *See Mueller v. City of Phoenix*, 102 Ariz. 575, 582, 435 P.2d 472, 479 (1967). Because only reasonable repairs and alterations to nonconforming uses are protected under A.R.S. § 9–462.02, the addition of a conforming attached sign will constitute an expansion to the property, taking the matter outside the protection of A.R.S. § 9–462.02. Finally, Mesa points out that the ordinance comes into play only if the property owner voluntarily chooses to apply for a permit to erect an additional sign.

2. Is the sign protected as existing nonconforming property?

■ Local zoning authority derives from the Urban Environment Management Act, A.R.S. § 9–461 *et seq.*, and A.R.S. § 9–462. *See City of Scottsdale v. Superior Court*, 103 Ariz. 204, 439 P.2d 290 (1968). A.R.S. § 9–462.01(A) gives municipalities broad authority to regulate signs and other land uses. *See City of Scottsdale v. Scottsdale Associated Merchants*, 120 Ariz. 4, 583 P.2d 891 (1978); *Bartolomeo v. Town of Paradise Valley*, 129 Ariz. 409, 631 P.2d 564 (App.1981). That authority is not unlimited, however; municipalities must adhere to the guidelines set forth in the Act. For example, in *McIntyre v.*

*Mohave County*, 127 Ariz. 317, 620 P.2d 696 (1980), a change in a local zoning ordinance was void because of the county's failure to adhere to a notice requirement provided in the statute. Nonetheless, zoning ordinances are presumed valid. *Transamerica Title Insur. Co. v. City of Tucson*, 23 Ariz.App. 385, 387, 533 P.2d 693, 695 (1975).

■ The plain language of the statute prohibits ordinances from affecting property existing at the time the ordinance takes effect. Once the ordinance is passed, however, the statute continues to protect only existing property, i.e., property which remains unchanged or receives only reasonable repairs or alterations. It does not protect new or additional construction to that property. A.R.S. § 9–462.02. This is in accord with the underlying spirit of zoning, which is to restrict nonconforming uses, and public policy requires that statutes be strictly construed against allowing their continuation. *Gannett Outdoor Co. v. City of Mesa*, 159 Ariz. 459, 461, 768 P.2d 191, 193 (App.1989). *See also Mueller v. City of Phoenix*, 102 Ariz. 575, 585, 435 P.2d 472, 482 (1967) (Struckmeyer, J., dissenting); 1 R. Anderson, *American Law of Zoning 3d*, § 6.35 *et seq.* (1986).

The first question here is whether the nonconforming sign is a part of the entire property such that additions or expansions to other unconnected parts of the property can be considered expansions of the nonconforming sign. If the addition of an attached conforming sign to the wall of the store constitutes an expansion of the nonconforming use, it would not be protected by A.R.S. § 9–462.02. *See Arizona Foundation for Neurology & Psychiatry v. Sienerth*, 13 Ariz.App. 472, 477 P.2d 758 (1970). If, however, additions to other parts of the property are *not* additions to the nonconforming sign, the protections of the statute would extend to the nonconforming sign, as long as the sign and its use remain unchanged. A.R.S. § 9–462.02; *see also Gannett*, 159 Ariz. at 461–62, 768 P.2d at 193–94; *Sienerth*, 13 Ariz.App. at 477, 477 P.2d at 763. Mesa relies on *Sienerth* for the holding that the earlier ver-

sion of the statute, which was substantially the same as the last sentence of the current statute, protects only existing property that remains unchanged and "reasonable repairs or alterations in buildings or property used for such existing purpose." While this proposition is correct, it is not dispositive in this case. In *Sienerth*, the plaintiff sought to expand an existing nonconforming physical plant used for a nonconforming hospital. It did not address whether a conforming addition to a conforming business which it advertised by a nonconforming on-premises sign could be considered a change in existing property.

Both parties cite *Mueller*. In particular, they quote the following portion of that decision:

> The business sign is an integral part of a business. It would seem an extreme position to allow a business as a nonconforming use in a residential section and yet to say as a matter of law that since no sign existed at the time of annexation such business would not be allowed a sign to identify its location or advertise its wares.

102 Ariz. at 582, 435 P.2d at 479. Circle K argues that this language protects its right to keep its existing sign as a reasonable way to advertise its business. We conclude that *Mueller* is distinguishable on its facts and that the language quoted does not advance Circle K's case. The *Mueller* decision arose in the context of whether the Phoenix Board of Adjustment had exceeded its jurisdiction by granting a variance to reconstruct a nonconforming building for a nonconforming use and to allow an accompanying sign, apparently the only one to identify the establishment. At most, *Mueller* defends a business' right to advertise by way of an on-premises sign. Mesa has not attempted to deny Circle K's right to signage.

■ Mesa relies on *Mueller* to support its contention that a sign is an integral part of a business and, thus, may be regulated as part of the whole parcel and not simply as an independent structure. While this is not necessarily the holding of the case, we agree that a municipality may consider on-premises signs as inherently connected with the business they advertise.

■ As a necessary corollary to that finding, we conclude that a municipality may consider a particular parcel as an integrated whole such that additions to one part of the parcel may be considered additions to all other parts of the parcel. This conclusion is supported by the plain language of Mesa City Code § 4–4–12(D)(6). That provision seeks to regulate signage as part of a "specific occupancy," rather than as individual signs having no relation to others advertising the same business premises. Consequently, any change to any part of the Circle K property could be considered a change to the existing property. This, then, takes the property and all of its parts outside the protection of the statute. Nothing in the statute prohibits this interpretation. *See Metro Mobile CTS Inc. v. Newvector Communications Inc.*, 661 F.Supp. 1504 (D.Ariz.1987), *aff'd*, 892 F.2d 62 (9th Cir.1989) (agency's interpretation of a regulation which it implements is ordinarily entitled to great weight.)

3. Does A.R.S. § 9–462.02 prohibit the elimination of nonconforming signs by a method other than purchase and condemnation?

■ The first sentence of A.R.S. § 9–462.02 provides: "The municipality may acquire by purchase or condemnation private property for the removal of nonconforming uses and structures." This language was discussed in *City of Scottsdale v. Scottsdale Associated Merchants*, 120 Ariz. 4, 583 P.2d 891 (1978). In that case, the city of Scottsdale amended its charter to provide for removal of all nonconforming signs subject to a period of amortization. The plaintiff-merchants brought a declaratory judgment action, arguing that the provision conflicted with A.R.S. § 9–462.02 and was therefore void. This court agreed, finding that the statute provided the "method of eliminating nonconforming uses—purchase or condemnation." *Id.* at 5, 583 P.2d at 892. Since the ordinance required elimination of the nonconforming

sign without the benefit of purchase or condemnation, it was void.

■ *Scottsdale Associated Merchants* is easily distinguishable from this case. In it, the city took affirmative action aimed at eliminating nonconforming signs. In this case, Mesa did not take any steps to eliminate the signs until after Circle K decided to remodel the store and install additional signing. Mesa did not attempt to eliminate the nonconforming sign as long as the parcel remained unchanged. Mesa affirms that had Circle K chosen not to remodel its store, the nonconforming sign could have stayed indefinitely. We agree with the trial court that this difference renders *Scottsdale Associated Merchants* inapplicable. The purpose of statutes allowing nonconforming uses is to prevent the injustice of forcing retroactive compliance and the doubtful constitutionality of compelling immediate discontinuance of a nonconforming use. *Gannett Outdoor Co. v. City of Mesa,* 159 Ariz. 459, 768 P.2d 191 (App. 1989); *Watanabe v. City of Phoenix,* 140 Ariz. 575, 578, 683 P.2d 1177, 1180 (App. 1984); *Phoenix City Council v. Canyon Ford, Inc.,* 12 Ariz.App. 595, 598, 473 P.2d 797, 800 (1970). This was the fatal flaw in the method chosen in *Scottsdale Associated Merchants,* which is not present here.

Circle K has not cited any other authority which convinces us that the legislature intended the permissive "may" used in the first sentence of A.R.S. § 9–462.02 to be interpreted as "shall". *Apache East, Inc. v. Wiegand,* 119 Ariz. 308, 312, 580 P.2d 769, 773 (App.1978). The statute certainly does not specifically prohibit Mesa's method of elimination of nonconforming uses.

## ILLEGAL EXACTION

Circle K next argues that the Board's decision constitutes an illegal exaction because Mesa has not shown a need to change the detached sign before the additional conforming signs can be allowed. Relying primarily on *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), Circle K argues that Mesa must show a substantial nexus between the impact of the existing detached sign and the grant of a permit for the attached logo and colorband. Because Mesa cannot show such a relationship, its attempt to remove or change the nonconforming sign is, Circle K argues, an "out-and-out plan of extortion," and amounts to an illegal exaction forbidden by both the federal and state constitutions.

Mesa makes three counterarguments. First, this is not a taking since Circle K voluntarily undertook the remodeling which resulted in requiring that the old sign be removed. Second, there is no taking because the removal of the sign will not preclude Circle K from making reasonable use of its property. Finally, Mesa argues that the "illegal exaction" rule of *Nollan* is applicable only where the governmental action results in a permanent physical occupation of the property. Because Mesa is not seeking to occupy or require Circle K to dedicate the land, *Nollan* is inapplicable. In response to Circle K's "nexus" argument, Mesa responds only that it had a substantial government purpose—to eliminate nonconforming uses as rapidly as possible. In reply, Circle K disputes Mesa's interpretation of *Nollan.* Circle K contends that the broad governmental purpose of eliminating nonconforming signs does not meet the specific "substantially advance" requirement. According to Circle K, it is not enough to say that Mesa could have rationally decided the measure adopted might achieve Mesa's objective. In fact, Circle K argues, the rational basis test was advocated in *Nollan* by the dissent and rejected by the majority. Circle K disagrees that *Nollan* is applicable only in cases of permanent physical occupation. Moreover, Circle K rejects Mesa's "voluntary nature of the remodeling" argument, pointing out that the same argument was implicitly rejected by the *Nollan* court. Finally, Circle K argues that a "taking" may exist even when the regulation does not rob the land of any economically viable use.

■ To decide whether a governmental action results in a taking, three questions must be answered. First, is the result sought a legitimate public purpose? Second, if so, does the method chosen "sub-

stantially advance" that legitimate purpose? And finally, assuming that it does, does it deprive the owner of the economically viable use of his property? If not, there is no taking. *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106, 111–12 (1980); *see also Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 127, 98 S.Ct. 2646, 2660, 57 L.Ed.2d 631, 650 (1978) (Court held that "a use restriction on real property may constitute a 'taking' if not reasonably necessary to the effectuation of a substantial public purpose," *citing Goldblatt v. Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), and *Nectow v. Cambridge,* 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928)).

Prior to *Nollan,* much of the case law addressed the last issue, deprivation of economically viable use. *See, e.g., Keystone Bituminous Coal v. DeBenedictis,* 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); *Ranch 57 v. City of Yuma,* 152 Ariz. 218, 731 P.2d 113 (App.1986); *Davis v. Pima County,* 121 Ariz. 343, 590 P.2d 459 (App.1978), *overruled on other grounds, Corrigan v. City of Scottsdale,* 149 Ariz. 538, 543, 720 P.2d 513, 518, *cert. denied,* 479 U.S. 986, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986). *Nollan,* however, focused on the second issue.

The Nollans owned a beachfront lot in California. The lot's oceanside boundary was the historic mean high tide line. Landward from that boundary was a seawall which divided the beach from the rest of the lot. Thus, part of the Nollan's lot was that part of the beach which lay between the high tide line and the wall.

The Nollans sought a permit from the California Coastal Commission to replace a small house on the lot with a much larger house. The Commission would only grant the permit on condition that the Nollans allow a public easement along the stretch of beach which they owned. The Commission sought to justify this requirement by saying that the new house would block the view of the sea and also create a psychological barrier to the use of beach areas that were open to the public. The Califor-

nia Court of Appeals upheld the Commission and the Nollans appealed to the Supreme Court of the United States. The Supreme Court reversed.

Justice Scalia, writing for a five-member majority, set the stage for the decision with the observation:

> The commission argues that a permit condition that serves the same legitimate police power purpose as a refusal to issue the permit should not be found to be a taking if the refusal to issue the permit would not constitute a taking. We agree. Thus, if the Commission attached to the permit some condition that would have protected the public's ability to see the beach notwithstanding the construction of the new house—for example, a height limitation, a width restriction, or a ban on fences—so long as the Commission could have exercised its police power (as we have assumed it could) to forbid construction of the house altogether, imposition of the condition would also be constitutional.

483 U.S. at 836, 107 S.Ct. at 3147–48, 97 L.Ed.2d at 688–89.

The Court noted that land use regulation does not effect a taking for which the state must compensate the property owner if the regulation substantially advances legitimate state interests and does not deny the owner the economically viable use of his land. The Court held that the condition imposed by the Coastal Commission was invalid because the required easement did not solve the problems the new house would create—a restricted view of the ocean and a restriction of access to the beach.

The Court said that prior Supreme Court decisions have not articulated the standard for determining what type of connection between the regulation and the state interest satisfies the requirement that the regulation "substantially advance" the state interest. It said, however, that it is not enough that the state could rationally have decided that the measure adopted might achieve the state's objective. The Court said that it was inclined to be particularly careful about the kind of regulation which

would substantially advance a legitimate state interest where the actual conveyance of property is made a condition of lifting a restriction since, under those circumstances, there is an increased risk that the purpose is to avoid the compensation requirement, rather than to achieve the state police purpose.

■ We turn to a consideration of the reasons why the City of Mesa regulates the size and placement of signs. A.R.S. § 9–462.01 gives municipalities authority to regulate signs "in order to conserve and promote the public health, safety and general welfare." The Mesa Sign Code articulates several specific purposes, including to "promote the effectiveness of signs by preventing their overconcentration, improper placement and excessive size," and "to enhance the flow of traffic and ease of travel," and to "protect travelers ... from injury or damages as a result of distraction or obstruction of vision...." Another purpose of the code is to "provide an improved visual environment." Mesa, Az., Code § 4–4–2 (1986).

Circle K insists that even if the city has shown that the condition *might* achieve the city's purpose, it has not carried its burden of showing that the regulation substantially advances the state interest. We disagree. The nexus between the condition—bringing the existing sign into compliance—and the new use—the addition of a sign, is as close as it could be. Circle K restrictively characterizes the purpose of the condition the city imposed as the elimination of nonconforming uses. That is too narrow a view of the matter. The city is not just seeking the elimination of a nonconforming use, but is furthering some or all of the purposes spelled out in its code, including fostering an improved visual environment. There is nothing unreasonable in requiring Circle K to bring its existing sign into conformity before increasing total signage on the premises. This case demands no further scrutiny of the city's action, especially since it does not involve a taking or occupation of property for the city's own use.

## CONCLUSION

Section 4–4–12(D)(6) of the Mesa City Code does not violate A.R.S. § 9–462.02. Because there is a direct relationship between the purposes for the regulation of signs and the required removal or modification of the nonconforming sign, the condition does not constitute a taking. The judgment of the trial court is affirmed.

KLEINSCHMIDT, P.J., and FIDEL, J., concur.