991 P.2d 272

**MOTEL 6 OPERATING LIMITED PART-NERSHIP, a Delaware limited partnership, Plaintiff–Appellee,**

v.

**CITY OF FLAGSTAFF, a political subdivision of the State of Arizona, Defendant–Appellant.**

Nos. 1 CA–CV 98–0678, 1 CA–CV 98–0036.

Court of Appeals of Arizona,
Division 1, Department E.

Nov. 30, 1999.

**570**

David K. Jones, P.C. by David K. Jones, Phoenix, Attorneys for Plaintiff–Appellee

Hufford, Horstman, McCullough & Mongini, P.C. by C. Benson Hufford and Joseph R. Bertoldo, City Attorney City of Flagstaff, Flagstaff, Attorneys for Defendant–Appellant

## OPINION

WEISBERG, Presiding Judge.

¶ 1 The City of Flagstaff ("the City") appeals from the judgment in favor of Motel 6 Operating Limited Partnership ("Motel 6"), Circle K Stores, Inc. ("Circle K"), and Greentree Village Partners Limited Partnership ("Greentree") (collectively "plaintiffs"). The judgment declared unlawful the City's refusal to allow alterations to plaintiffs' signs. The City also appeals the award of attorneys' fees to plaintiffs. For the reasons discussed below, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Plaintiffs own separate businesses in the City, and have freestanding signs on their properties that identify the businesses located thereon. At the time they were erected, the signs conformed to the City's zoning ordinance.

¶ 3 The signs are metal structures with electrical components for illumination. They are anchored to the ground with concrete footings and metal reinforcements, and contain plastic or flexible material sign faces on which sign messages are printed. The sign faces contribute little to the overall cost of the signs, and may easily be removed and replaced without affecting the stability of the sign structure. The periodic replacement of the sign face is a contemplated use of such signs.

¶ 4 In 1997, the City amended its land development code ("Code") to decrease the allowable height and area limits of freestanding signs. Although plaintiffs' signs exceeded the permissible limits of the amended code, they were exempted by a "grandfather clause" as legal, nonconforming signs. Plaintiffs later applied to the City for permission to replace the sign faces, but the City denied permission.[1]

¶ 5 Plaintiffs filed three separate but similar complaints against the City, which were eventually consolidated. The trial court entered judgment in plaintiffs' favor, ordering the City to issue the necessary permits. The court concluded that the proposed changes were "reasonable alterations" within the meaning of Arizona Revised Statutes Annotated ("A.R.S.") section 9–462.02, and that the City's "failure to issue permits was an abuse of discretion, in excess of its jurisdiction and legal authority." The City appeals from that judgment.

¶ 6 The trial court subsequently awarded plaintiffs their attorneys' fees, ruling that the relief obtained was in the nature of mandamus. The City also appeals from that judgment, and we have consolidated the two appeals. We have jurisdiction over this matter pursuant to A.R.S. section 12–2101(B).

### ISSUES

1. Did the trial court properly order the City to issue plaintiffs permits for the sign face changes as reasonable alterations to their legal, nonconforming signs?

2. Did the trial court properly award plaintiffs their attorneys' fees under A.R.S. section 12–2030?

### DISCUSSION

#### Standard of Review

¶ 7 Plaintiffs' complaints sought mandamus and special action relief. When

---

1. Motel 6 and Circle K wanted to update the logos on their signs, while Greentree wanted to replace the sign face at its shopping plaza to reflect a new tenant.

the trial court assumes jurisdiction of the merits in a special action proceeding, this court may review that decision. *See GST Tucson Lightwave, Inc. v. City of Tucson,* 190 Ariz. 478, 482, 949 P.2d 971, 975 (App. 1997). We give deference to the trial court's findings of fact, view the evidence in the light most favorable to sustaining its decision, and inquire whether the evidence might reasonably support the trial court's ruling. *See id.* Nevertheless, we are not bound by the trial court's conclusions of law, which we review *de novo. See id.*

### Plaintiffs' Requested Sign Face Changes Were Reasonable Alterations to Their Legal, Nonconforming Signs

 ¶ 8 The City derives its zoning power from the State, and its regulations must comply with the State zoning enabling statute. *See Levitz v. State,* 126 Ariz. 203, 205, 613 P.2d 1259, 1261 (1980). The enabling statute "grandfathers" legal, nonconforming uses by providing, in pertinent part:

> Nothing in an ordinance or regulation authorized by this article shall affect existing property or the right to its continued use for the purpose used at the time the ordinance or regulation takes effect, nor to any reasonable repairs or alterations in buildings or property used for such existing purpose.

A.R.S. § 9–462.02(A). The purpose of this provision "is to prevent the injustice of forcing retroactive compliance and the doubtful constitutionality of compelling immediate discontinuance of a nonconforming use." *Gannett Outdoor Co. of Arizona v. City of Mesa,* 159 Ariz. 459, 462, 768 P.2d 191, 194 (App. 1989).

¶ 9 The City Code provision addressing "alterations" attempts to severely restrict any alterations, repairs or maintenance of nonconforming signs. *See* Flagstaff Land Development Code § 10–08–001–0003.E.3. It states, in pertinent part:

> 3. ALTERATIONS: A nonconforming sign and/or sign structure shall not be altered, reconstructed, replaced or relocated other than to be brought into compliance with this Division, except for:

> a. Reasonable repair and/or maintenance required to restore the structure to its original state.

*Id.* Its restrictive terms thereby conflict with the enabling statute provision which authorizes reasonable alterations to nonconforming property. *See* A.R.S. § 9–462.02(A).

 ¶ 10 Notwithstanding, the City asserts that the permit provision of the Code accommodates reasonable alterations of nonconforming signs by prohibiting the issuance of a sign permit for any "requests for changes to a nonconforming sign of an aggregate of ten percent (10%) or more of any part of the sign." Code § 10–08–001–0007.-B.2(a)(2). It thereby implicitly allows, the City reasons, for the issuance of permits for alterations to a nonconforming sign of an aggregate of less than ten percent of any part of a sign. *See id.* But this interpretation conflicts with the Code's "Alterations" provision that does not allow *any* alteration of a nonconforming sign, except those needed to bring a sign into compliance with the amended code. *See* Code § 10–08–001–0003.E.3.

¶ 11 Moreover, even accepting the City's interpretation of the permit provision, the City could still prohibit alterations of very small or insignificant parts of a sign if 10% or more of *a component* were to be changed. Accordingly, even applying this generous view of the permit provision would impermissibly prohibit many "reasonable alterations" guaranteed by the enabling statute.

¶ 12 Nonetheless, the City relies on a Massachusetts case as supporting its decision to deny the permits. In *Strazzulla v. Building Inspector of Wellesley,* 357 Mass. 694, 260 N.E.2d 163 (1970), the court upheld a municipality's refusal to permit the relettering of a nonconforming sign to reflect a new tenant. But, unlike Arizona's statute, the Massachusetts enabling statute affords its municipalities much greater discretion to regulate nonconforming structures. *See id.* at 164–65. Also, the decision does not reflect that the Massachusetts enabling statute requires the allowance of reasonable alterations as does A.R.S. section 9–462.02. *See id.* Giv-

en the differences in the respective zoning laws, *Strazzulla* is not helpful here.[2]

¶ 13 Other courts have concluded that alterations necessary to change sign messages do not trigger the loss of nonconforming use rights. *See Ray's Stateline Market v. Town of Pelham*, 140 N.H. 139, 665 A.2d 1068 (1995) (property owner has right to change sign panels to reflect different advertiser); *Rogers v. Zoning Bd. of Adjustment of the Village of Ridgewood*, 309 N.J.Super. 630, 707 A.2d 1090 (App.1998) (landlord permitted to change sign face to reflect new tenant). These cases are more analogous to the present case than is *Strazzulla*, and as such are more persuasive.

■■■ ¶ 14 Finally, the City asserts that Arizona public policy encourages the elimination of nonconforming uses. *See Rotter*, 169 Ariz. at 272, 818 P.2d at 707. But, while this is so, nonconforming uses still are constitutionally protected from the retroactive effect of zoning laws and may be removed only "as quickly as possible *within the limits of fairness and justice.*" *Id.* (emphasis added). Here, plaintiffs did not seek to alter the use or structure of the signs in any way. They simply wanted to update the sign faces to reflect current company logos and shopping center tenants, without significantly altering the existing signs or expanding the nonconforming uses. We hold that such alterations are reasonable.[3]

### The Trial Court Properly Awarded Plaintiffs Attorneys' Fees

■■■ ¶ 15 The trial court awarded plaintiffs their attorneys' fees pursuant to A.R.S. section 12–2030, finding that their action was in the nature of a mandamus. This statute provides, in pertinent part:

A court shall award fees and other expenses to a party ... which prevails by an adjudication on the merits in a civil action brought by the party against ... any political subdivision of the state ... to compel ... any officer of any political subdivision of this state to perform an act imposed by law as a duty on the officer.

A.R.S. § 12–2030. Determining whether this attorneys' fee statute applies here is a conclusion of law that we review *de novo*. *See Phoenix Newspapers, Inc. v. Department of Corrections*, 188 Ariz. 237, 244, 934 P.2d 801, 808 (App.1997).

■■ ¶ 16 The City contends that this fee provision is inapplicable because plaintiffs' action was not a mandamus action. The City argues that plaintiffs did not seek to compel zoning officials to carry out their statutory duties under the Code; rather, they challenged the validity of the City's zoning ordinance. We disagree.

¶ 17 Plaintiffs successfully sought to compel the City's zoning officials to issue these permits that would have been issued had the Code been in compliance with state law. Accordingly, their action was a mandamus-type special action and an award of fees was mandatory. *See Exodyne Properties, Inc. v. City of Phoenix*, 165 Ariz. 373, 380, 798 P.2d 1382, 1389 (App.1990).

### CONCLUSION

¶ 18 We affirm the trial court's judgment ordering the City to issue the requested sign permits. We further affirm the trial court's award of attorneys' fees to plaintiffs pursuant to A.R.S. section 12–2030.

---

2. The other cases upon which the City relies in support of its position are similarly inapposite. *See Rotter v. Coconino County*, 169 Ariz. 269, 279, 818 P.2d 704, 714 (1991) (county may prohibit expansion of nonconforming use onto other property); *Outdoor Systems, Inc. v. City of Mesa*, 169 Ariz. 301, 310, 819 P.2d 44, 53 (1991) (city can require removal of nonconforming signs as a condition to issuance of building permits for new development); *Circle K Corp. v. City of Mesa*, 166 Ariz. 464, 468–69, 803 P.2d 457, 461–62 (App. 1990) (city could require removal or modification

of nonconforming signs as a condition to approval of additional signs); *Gannett*, 159 Ariz. at 464, 768 P.2d at 196 (the enabling statute does not sanction replacement of an entire sign structure as a "reasonable alteration"). Plaintiffs here do not seek any of these things.

3. Because we agree with the trial court's interpretation of the relevant zoning laws, we do not address plaintiffs' additional contentions of First Amendment and trademark violations.

¶ 19 Plaintiffs request an award of attorneys' fees on appeal. Pursuant to A.R.S. section 12–2030, we grant the request subject to plaintiffs' compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

CONCURRING: MICHAEL D. RYAN, Judge, and SARAH D. GRANT, Judge.