IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| STAGECOACH TRAILS MHC, L.L.C., | ) ) ) | 2 CA-CV 2011-0085 DEPARTMENT B |
| Plaintiff/Appellee, | ) ) ) | O P I N I O N |
| v. | ) ) | |
| CITY OF BENSON, a municipal corporation; CITY OF BENSON BOARD OF ADJUSTMENT, a body politic; and BRAD HAMILTON, Zoning Administrator for the City of Benson, | ) ) ) ) ) ) ) | |
| Defendants/Appellants. | ) ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV201000395

Honorable Stephen M. Desens, Judge
Honorable Wallace R. Hoggatt, Judge

AFFIRMED IN PART; VACATED AND REMANDED IN PART

Lewis and Roca LLP
  By John C. Hinderaker and Jeffrey L. Sklar                             Tucson
                                          Attorneys for Plaintiff/Appellee

Michael J. Massee, Benson City Attorney                                 Nogales

and

Sims Murray Ltd.
  By Jeffrey T. Murray and Kristin M. Mackin                    Phoenix
                                                   Attorneys for Defendants/Appellants

E S P I N O S A, Judge.

¶1        The Arizona Supreme Court has remanded this zoning-enforcement case

for this court to determine whether a mobile-home park as a whole, or only its individual

constituent spaces, can be considered a nonconforming use under A.R.S. § 9-462.02(A).

*Stagecoach Trails MHC, L.L.C. v. City of Benson*, 231 Ariz. 366, ¶ 17, 295 P.3d 943, 947

(2013).  We have done so and conclude, as a matter of law, that a mobile-home park in its

entirety is entitled to nonconforming-use status.  But because the record is insufficient to

determine whether the mobile-home park in this case was a nonconforming use, we

remand this matter to the superior court for further proceedings.

## Background

¶2        A complete factual background is provided in our supreme court's opinion.

*Stagecoach Trails*, 231 Ariz. 366, ¶¶ 3-13, 295 P.3d at 944-46.  We restate only those

facts that are relevant to the issues before us.

¶3        In 1998, the City of Benson amended § 16 of its zoning regulations to

increase the setback and minimum-size requirements for spaces within Benson mobile-

home parks.  Initially, the City did not apply the requirements of the amended regulations

to parks that were already operating.  Between 2003 and 2010, the City granted the

2

Stagecoach Trails mobile-home park (Stagecoach) permits to replace thirty-four of its mobile homes with newer, often larger models that did not comply with applicable setback requirements. Then, in late 2009, the City notified mobile-home park operators, including Stagecoach, that it would begin applying the amended version of § 16 when individual homes were replaced and that any future permit applications would be evaluated under the requirements of that section.

¶4 In January 2010, the City denied Stagecoach's application for a permit to install a new and larger mobile home on one of its spaces (space 27). In the denial letter, the City's zoning administrator explained that before the permit could be granted, Stagecoach would have to show, among other things, that the applicable setback requirements would not be violated. Stagecoach appealed the permit denial to the Benson Board of Adjustment, arguing that the entire park is a nonconforming use under § 9-462.02(A) and that it was therefore entitled to replace individual homes without relinquishing nonconforming-use status and being required to comply with the zoning requirements then in force. The board of adjustment rejected this argument and affirmed, agreeing with the zoning administrator that the mobile-home park's constituent spaces individually were nonconforming uses.

¶5 Stagecoach filed a special-action complaint in superior court, appealing the board of adjustment decision and seeking invalidation of the amended § 16. Based in part on the City's concession that it had not strictly complied with statutory notice requirements when adopting the amendment to § 16, the court invalidated that section.

3

The City then sent two additional letters to Stagecoach, one in July and one in September, again denying the permit application for space 27 and explaining that even without regard to the now invalidated § 16, the space's new site plan violated various other provisions of the zoning regulations. The superior court retained jurisdiction over the case and held an evidentiary hearing, after which it reversed the board of adjustment's ruling and ordered the City to issue a permit for the mobile home on space 27.

¶6　　　　The City appealed, and we affirmed in part and reversed in part, concluding, *inter alia*, that Stagecoach had failed to exhaust its administrative remedies because it never had presented to the board of adjustment the issue of whether the mobile home on space 27 violated zoning regulations left in force after § 16 was invalidated. *Stagecoach Trails MHC, L.L.C. v. City of Benson*, 229 Ariz. 536, ¶ 19, 278 P.3d 314, 318-19 (App. 2012). We reasoned that the superior court's jurisdiction had ended with the invalidation of amended § 16 and it was necessary for the board of adjustment to address whether space 27 would have been a nonconforming use with respect to the provisions left in force after the invalidation. *Id.*

¶7　　　　Our supreme court granted review and vacated this court's decision,[1] concluding that Stagecoach was not required to exhaust its administrative remedies because returning to the board of adjustment would have been futile, and holding that the

---

[1]The supreme court did not disagree with our determination that the trial court had erred in granting mandamus relief and awarding attorney fees to Stagecoach. *Stagecoach Trails*, 231 Ariz. 366, ¶ 24, 295 P.3d at 948. Those issues are not involved in the court's remand of the case to this court.

superior court, therefore, had properly retained jurisdiction over the matter. *Stagecoach Trails*, 231 Ariz. 366, ¶¶ 16-17, 25, 295 P.3d at 946, 948. The supreme court remanded the case for this court to consider whether a mobile-home park as a whole, or an individual space within the park, is properly considered a nonconforming use, and any other "relevant, unaddressed issues." *Id.* ¶ 25. We do so now.

## Discussion

¶8 When a use of property predates the adoption of a zoning regulation prohibiting it, such use is known as a legal nonconforming use and is entitled to certain constitutional and statutory protections. *Rotter v. Coconino Cnty.*, 169 Ariz. 269, 271, 818 P.2d 704, 706 (1991); *see also* § 9-462.02(A). As such, a zoning regulation may not be applied retroactively to extinguish a preexisting use of property "for the purpose used at the time the ordinance or regulation takes effect"; nor may a regulation affect the owner's right to make "any reasonable repairs or alterations in buildings or property used for such existing purpose," unless the municipality purchases or condemns the property. § 9-462.02(A). Courts interpret these protections narrowly, however, because nonconforming uses are not favored by the law and "should be eliminated or reduced to conformity as quickly as possible"; but such elimination may be accomplished only "within the limits of fairness and justice." *Rotter*, 169 Ariz. at 272, 275, 818 P.2d at 707, 710; *accord Outdoor Sys., Inc. v. City of Mesa*, 169 Ariz. 301, 307, 819 P.2d 44, 50 (1991); *Gannett Outdoor Co. of Ariz. v. City of Mesa*, 159 Ariz. 459, 461, 768 P.2d 191, 193 (App. 1989).

5

**¶9** In this case, our supreme court has noted that "a key issue is whether the entire park or instead an individual space is the nonconforming use." *Stagecoach Trails*, 231 Ariz. 366, ¶ 15, 295 P.3d at 946. Stagecoach contends that the park as a whole is the nonconforming use and that replacing individual homes within the park does not constitute a change in use and therefore would not extinguish nonconforming-use rights. The City, on the other hand, argues that each individual space is a separate nonconforming use and that replacing a mobile home changes the use of that space such that it must conform to current zoning requirements. In the proceedings below, the board of adjustment agreed with the City that the individual space constitutes the nonconforming use, whereas the superior court concluded it was the mobile-home park as a whole. This issue is one of law, which we review *de novo*. *See City of Tucson v. Whiteco Metrocom, Inc.*, 194 Ariz. 390, ¶ 25, 983 P.2d 759, 766 (App. 1999).

**¶10** Relying principally on *Outdoor Systems, Inc.*, 169 Ariz. 301, 819 P.2d 44, and *Eddins v. City of Lewiston*, 244 P.3d 174, 180 (Idaho 2010), Stagecoach argues that a mobile-home park as a whole constitutes the nonconforming use. In *Outdoor Systems*, our supreme court considered whether "existing property," as that term is used in § 9-462.02, related to individual nonconforming billboards or to the entire parcel on which they were located. 169 Ariz. at 309-10, 819 P.2d at 52-53. Although the court noted that its interpretation was rooted in the policy disfavoring nonconforming uses, it held that because the challenged ordinances sought to regulate the billboards as part of the entire development site upon which they were located, the statutory term "'existing property'

6

consists of the *entirety* of the nonconforming parcel, meaning the billboard *plus* the surrounding property." *Id.*

¶11 In *Eddins*, 244 P.3d 174, a dual-purpose manufactured-home and recreational-vehicle park was a legal use that preexisted an ordinance prohibiting recreational vehicles from being located in manufactured-home parks. *Id.* at 176. When one of the park's tenants sought to replace an existing recreational vehicle with a newer one, the owner of the park applied for the requisite permit, which the city denied under the ordinance. *Id.* The court rejected the city's argument that the park owner's right to continue a nonconforming use "attaches only to the recreational vehicles that were on the property at the time the ordinance was passed." *Id.* at 179. The court held that because "[t]he fundamental or primary use of [the] real property—both before and after the ordinance was passed—was to rent spaces for both manufactured homes and recreational vehicles," the park owner was entitled to continue that use of his property, even to the extent of replacing an existing recreational vehicle with a new one. *Id.*

¶12 The City, citing the principle that legal protections must be construed narrowly against the continuation of nonconforming uses, *see City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 24, 181 P.3d 219, 228 (App. 2008), counters that such a construction favors treating the individual spaces within the park as separate uses. The City further argues that the park, considered as a whole, is a conforming use because the zoning regulations permit the use of the property as a mobile-home park, and thus *Eddins*, in which the dual-purpose park was not permitted by the ordinance, is inapposite.

7

¶13 We agree with Stagecoach that the protected use is the mobile-home park rather than the individual spaces. Inherent in the statutory definition of a mobile-home park is its character as a parcel of land containing multiple mobile-home spaces for rent. *See* A.R.S. § 33-1409(15), (16). And, as the *amicus curiae*, Manufactured Housing Communities of Arizona, points out in its brief, statutes governing changes of use in the mobile-home context treat the fundamental "use" as the entire park rather than the individual spaces. *See* § 33-1409(5) ("'Change in use' means either . . . [a] change in the use of land from the rental of mobile home spaces in a mobile home park to some other use[, or t]he redevelopment of the mobile home park."); *see also* A.R.S. §§ 33-1476(H) (park owner intending to change use of portion of park must notify all tenants in park); 33-1476.01(A) (same). These statutes demonstrate the legislature's intent that when mobile-home spaces are part of a mobile-home park, rather than qualified individual "uses," the park should be treated as a unified use.

¶14 The mobile-home park in this case is a single parcel of land owned solely by Stagecoach. And, as the City acknowledged before the board of adjustment, "the individual internal spaces are not platted or legally recorded." These factors demonstrate that the mobile-home park as a whole is a single, unified use. As such, Stagecoach has a vested right to continue the use of the entire park as it existed before it became nonconforming. *See Rotter*, 169 Ariz. at 271-72, 818 P.2d at 706-07. We find unpersuasive the City's contention that the mobile-home park is a "conforming use" in light of the fact that some, if not all, of the park's component spaces fail to comply with

8

current setback requirements. Although the Benson Zoning Regulations may permit mobile-home parks, in view of our conclusion that the "use" is the park as a whole, we disagree that such parks are conforming if they fail to comply with current zoning regulations.

¶15        Having concluded that the nonconforming use protected by § 9-462.02(A) is the use of the entire parcel as a mobile-home park, the next question we must address is whether replacing one mobile home with another in such a park is permissible. Section 9-462.02(A) protects not only existing uses of property, but also the owner's ability to make "reasonable repairs or alterations." As our supreme court has noted, although a property owner has no right to expand a nonconforming use of property onto an adjacent parcel, "the theory of vested rights within the *original parcel*, premised on due process concerns, supports the right of the nonconforming business to continue and adjust to new circumstances." *Rotter*, 169 Ariz. at 278-79, 818 P.2d at 713-14.

¶16        Although we have found no case that directly controls here, prior Arizona decisions provide general principles from which we may determine whether substitution of a mobile home in a mobile-home park constitutes a reasonable alteration. An "alteration" does not include the complete replacement of a nonconforming use or a major component of such use. *See Whiteco Metrocom, Inc.*, 194 Ariz. 390, ¶ 29, 983 P.2d at 767 (replacement of billboard support structure extinguishes legal status of nonconforming billboard); *Gannett Outdoor Co. of Ariz.*, 159 Ariz. at 463-64, 768 P.2d at 195-96 (replacement of entire nonconforming billboard not permitted). And an

9

expansion of exterior dimensions generally is outside the scope of a reasonable alteration. *See Ariz. Found. for Neurology & Psychiatry v. Sienerth*, 13 Ariz. App. 472, 477, 477 P.2d 758, 763 (1970) (expansion of hospital physical plant outside scope of term "alteration"). Replacement of various components of a nonconforming use, however, is permissible and does not extinguish the permitted status of a nonconforming use. *See City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, ¶¶ 21-29, 32 P.3d 31, 36-38 (App. 2001) (finding alterations to nonconforming billboard reasonable, including inserting new parts, replacing wooden parts with steel parts, removing cross-bracing, and painting parts off-site and reinstalling them); *Motel 6 Operating Ltd. P'ship v. City of Flagstaff*, 195 Ariz. 569, ¶ 14, 991 P.2d 272, 275 (App. 1999) (replacing face of nonconforming sign to update advertisements constitutes reasonable alteration), *disapproved on other grounds by Stagecoach Trails*, 231 Ariz. 366, 295 P.3d 943.

¶17 In this case we are concerned with a mobile-home park's use as a mobile-home park, so we look to the park as a whole when considering whether an alteration voids the park's legal nonconforming status. Replacing a mobile home in a mobile-home park does not amount to an expansion or replacement of the nonconforming park: it does not alter the number of units in the park, nor does it expand the acreage of the park. Thus, replacing individual units is more like the replacement of individual billboard components as they wear out or become obsolete, as in *City of Tempe v. Outdoor*

10

*Systems*. We therefore conclude that replacing a mobile home in a mobile-home park is a reasonable alteration that does not extinguish the park's status as a nonconforming use.[2]

**¶18** This does not end the analysis, however. Although replacing a mobile-home unit in a mobile-home park is not a change in use, the new mobile home still must conform to the zoning regulations applicable to the nonconforming mobile-home park—that is, the zoning regulations under which the park was last a conforming use. For example, if a mobile home is replaced with a larger one, and the larger home violates the setback requirements, if any, under which the park was most recently a conforming use, then the larger mobile home is prohibited under the applicable zoning regulations and the City is entitled to refuse to issue a permit for it.[3]

**¶19** Having articulated the applicable legal principles, we find that we cannot apply them to the facts of the case before us because the record does not contain sufficient information. Although the superior court applied the 1982 zoning regulations

---

[2]Our reasoning is grounded in the conclusion that a mobile-home park is a single, unified use and thus may not apply to mobile-homes that are not located in such a park.

[3]Applying § 16 (1982) of the Benson Zoning Regulations, the superior court determined that no setback requirements were applicable to mobile homes placed within an approved mobile-home park. However, although § 16 does not impose setback requirements, as the City points out, § 7 does require "[a]ll uses" in the R–3 zoning district, including "[m]obile home parks," to "conform to the requirements given in Table One," which sets forth setbacks and minimum-space requirements. *See Whiteco Outdoor Adver. v. City of Tucson*, 193 Ariz. 314, ¶ 7, 972 P.2d 647, 649-50 (App. 1998) ("[I]ssues involving interpretation of statutes or ordinances are questions of law subject to this court's *de novo* review."). Accordingly, if on remand the superior court concludes that the 1982 regulations are applicable, it must apply the setback requirements contained in Table One.

11

after concluding that Stagecoach was an "'approved' manufactured home park for purposes of this litigation," the court did not make a finding as to when the park was approved, stating only that "it has always historically been treated as such." But without a clear determination of when Stagecoach was last a conforming park, it is unknown which version of the zoning regulations applies.[4] Once the superior court determines which zoning regulations are applicable to Stagecoach by virtue of its nonconforming status, the court must then apply them to determine whether the mobile home placed on space 27 is permitted under those provisions, including any setback requirements.[5]

---

[4]We do not agree with Stagecoach that the City conceded the park had been a conforming use until § 16 was amended in 1998. The board of adjustment's minute entry that suggests that concession in fact incorrectly paraphrases the city attorney's statement. The audio recording of the proceedings establishes that the city attorney's actual words were:

> There are a couple of points, though, that have been misrepresented here tonight, throughout the night. And one of them is that these spaces have been legal since the 70s, have been consistently legal.

This statement disagrees with the notion that the park was a conforming use until § 16 was amended in 1998.

[5]Stagecoach requested that we take judicial notice of various documents that purport to show when it became an "approved" mobile-home park, to support its argument that the park was conforming in the 1970s. We declined to do so, however, because evaluation of such evidence is within the province of the trial court, not an appellate court. *See State v. Schackart*, 190 Ariz. 238, 247, 947 P.2d 315, 324 (1997) (appellate court generally does not consider evidence not first presented to the trial court).

**Judicial Bias**

¶20        The City also argues the presiding judge of the superior court erred in overruling the City's notice seeking to strike the trial judge on the basis of judicial bias. In its pre-hearing memorandum to the presiding judge, the City characterized the trial judge's rulings as "so contrary to law, so egregious in their basic unfairness and so bizarre in their internal inconsistency that they provide compelling evidence of Judge Desens' bias." The presiding judge considered the memorandum and held a hearing at which he offered the City an opportunity to make an offer of proof. The presiding judge then overruled the notice without taking evidence, finding that it was based on "[p]ure speculation" and that "there's no basis for it at all." On appeal, the City suggests that the trial judge's alleged bias deprived it of a fair and impartial trial and, consequently, the presiding judge abused his discretion by failing to assign a new judge. Specifically, the City contends that the presiding judge erred by requiring evidence of extrajudicial bias and failing to consider actions taken by the trial judge in this case as evidence of the judge's bias.

¶21        In Arizona, "[a] party challenging a trial judge's impartiality must overcome the presumption that trial judges are 'free of bias and prejudice.'" *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, ¶ 29, 234 P.3d 623, 631 (App. 2010), *quoting State v. Rossi*, 154 Ariz. 245, 247, 741 P.2d 1223, 1225 (1987). Judicial rulings alone do not support a finding of bias or partiality without a showing of an extrajudicial source of bias or a deep-seated favoritism. *State v. Schackart*, 190 Ariz. 238, 257, 947 P.2d 315, 334

(1997); *Simon*, 225 Ariz. 55, ¶ 29, 234 P.3d at 631; *Smith v. Smith*, 115 Ariz. 299, 303, 564 P.2d 1266, 1270 (App. 1977). And "[a] change of judge for cause is not warranted if based merely on 'speculation, suspicion, apprehension, or imagination.'" *Costa v. Mackey*, 227 Ariz. 565, ¶ 12, 261 P.3d 449, 455 (App. 2011), *quoting State v. Ellison*, 213 Ariz. 116, ¶ 37, 140 P.3d 899, 911 (2006). We review for an abuse of discretion the denial of a motion for change of judge based on a claim of judicial bias. *Schackart*, 190 Ariz. at 257, 947 P.2d at 334; *Smith v. Mitchell*, 214 Ariz. 78, ¶ 5, 148 P.3d 1151, 1153 (App. 2006).

**¶22**    The City asserts that its claim of bias is supported by both an extrajudicial source and the cumulative effect of the trial judge's rulings in this case. The City attempts to demonstrate an extrajudicial source of bias by referring to the trial judge's purported "judicial philosophy" that when a zoning ordinance restricts a property owner's use of property, it is a constitutional "taking." But, as the presiding judge found, a judge's legal conclusions, if erroneous, can be corrected in an appellate proceeding; they do not, standing alone, indicate bias. *See Costa*, 227 Ariz. 565, ¶ 13, 261 P.3d at 455 (even a gross error does not establish judicial bias).

**¶23**    As for the trial judge's rulings and comments, which the City claims demonstrate bias even though they are not extrajudicial, these too fail to exhibit deep-seated animus or favoritism or to otherwise overcome the presumption of impartiality. *See Simon*, 225 Ariz. 55, ¶ 30, 234 P.3d at 631 (no judicial bias even where judge consistently ruled against movant). The City points out that after granting partial

14

summary judgment in favor of Stagecoach, the judge immediately granted Stagecoach's oral motion for a writ of mandamus without allowing the City to respond. But the record does not suggest the judge did so in order to prevent the City from being heard; rather, it appears the court entered the writ as a means of effecting its simultaneous ruling on the summary-judgment motion, on which the City had been heard. The judge stated he sought "to place all the issues on the table" by directing the zoning administrator to reprocess the permit. Even assuming he should have allowed the City an opportunity to be heard, we do not agree that the judge's failure to do so here demonstrated "'a hostile feeling or spirit of ill-will.'" *Simon*, 225 Ariz. 55, ¶ 29, 234 P.3d at 631. This is confirmed by the fact, as the City acknowledges, that the judge later reversed his decision to issue the writ based on the City's motion for reconsideration.

¶24 The City next assigns bias to the trial judge's setting an accelerated hearing on the merits, which the City suggests did not allow it ample time to prepare for the merits hearing. But both parties were required to work within the accelerated timeframe. Consequently, we do not see how this reflected that the judge bore a "hostile feeling or spirit of ill-will" toward the City. *Simon*, 225 Ariz. 55, ¶ 29, 234 P.3d at 631. Although the judge may have sought to expedite proceedings in order to resolve the case before his retirement, as the City suggests, it seems this demonstrates the judge's desire to conserve judicial resources rather than to disadvantage the City.

¶25 The City also argues the trial court's bias was shown when it allowed Stagecoach to file its supplemental complaints *nunc pro tunc* and to depose the zoning

administrator earlier than would normally be allowed. But this is consistent with the judge's stated desire to expedite proceedings; nothing about the ruling suggests that the judge's decision was rooted in animus for the City or its position. And even if these rulings could be construed as an abuse of the trial judge's discretion, they do not demonstrate judicial bias. Accordingly, because the City did not allege a sufficient case of judicial bias, we find no abuse of discretion in the presiding judge's decision to overrule the notice without taking additional evidence.

**Disposition**

¶26 For the foregoing reasons, we vacate the judgment and remand this matter to the superior court to determine under which version of the Benson Zoning Regulations Stagecoach was a conforming use and whether the mobile home placed on space 27 complies with those regulations, and to make any other findings consistent with this opinion that are necessary to resolve the case. The presiding judge's ruling on the City's notice of change of judge is affirmed.

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Judge

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

16