NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

EVELYN DECORMIER, *Petitioner/Appellee*,

*v.*

WILLIAM CORMIER, *Respondent/Appellant*.

No. 1 CA-CV 21-0604 FC

FILED 12-29-2022

Appeal from the Superior Court in Maricopa County
No. FC2017-004503
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED**

COUNSEL

Cordell Law, LLP, Scottsdale
By Kristina L. Cervone
*Co-Counsel for Petitioner/Appellee*

Daniel A. Rodriguez Law, Phoenix
By Daniel Alejandro Rodriguez
*Co-Counsel for Petitioner/Appellee*

Udall Shumway, PLC, Mesa
By Steven H. Everts
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Angela K. Paton and Judge Peter B. Swann[1] joined.

---

**C R U Z**, Judge:

¶1        William Cormier ("Father") appeals orders of legal decision-making and parenting time regarding his two minor daughters, R.C., born in 2006, and E.C., born in 2007 ("the children").  He also appeals the superior court's denial of his motion for change of judge and the court's order finding him in contempt for failing to pay child support arrearages.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the superior court's orders.  *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283, ¶ 14 (App. 2019).

¶3        Evelyn DeCormier ("Mother") and Father were married and lived in Arizona when the children were born.  When the children were young, Father and Mother moved with them to the United Arab Emirates ("UAE").  While living in the UAE, Father and Mother divorced, and Mother later moved with the children to Arizona without Father's consent.  Father, who had lost his employment in the UAE, moved to Massachusetts shortly thereafter.

---

[1]        Judge Peter B. Swann was a sitting member of this court when the matter was assigned to this panel of the court.  He retired effective November 28, 2022.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to Arizona Revised Statutes ("A.R.S.") section 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Swann as a judge *pro tempore* in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and the period during which his vacancy remains open and for the duration of Administrative Order 2022-162.

¶4  In 2017, Mother domesticated the UAE divorce decree and initiated legal decision-making and parenting time proceedings in Maricopa County Superior Court. Each party sought to be the children's primary residential parent—Father in Massachusetts and Mother in New Zealand. The superior court appointed a court-appointed advisor for the children, who interviewed the parties, the children, and Mother's significant other and issued a court report in January 2019.

¶5  After an evidentiary hearing in May 2019, the superior court ordered joint legal decision-making authority with Mother having final authority, designated Mother primary residential parent in New Zealand, and awarded Father parenting time during school breaks. The court considered the children's best interests based on the factors in A.R.S. §§ 25-403, -403.01, and -403.03, but did not consider the relocation-specific factors identified in A.R.S. § 25-408(I). In addition, the court entered a judgment against Father for child support arrearages. Mother moved to New Zealand with the children in August 2019.

¶6  Father appealed, and in June 2020, this court reversed the relocation, legal decision-making, and parenting time orders. *DeCormier v. Cormier*, 1 CA-CV 19-0568 FC, 2020 WL 3526673 (Ariz. App. June 30, 2020) (mem. decision). We directed the court to reconsider those issues on remand, and ordered that the court "in its discretion, may resolve those issues on the existing record, or it may order supplemental briefing and may take additional evidence to address the relocation-specific best interest factors identified in subsection 25-408(I). *See* A.R.S. §§ 25-403, -403.01, and -408." *DeCormier*, 1 CA-CV 19-0568 FC, at *3, ¶ 15. We affirmed the court's order for child support arrearages and left in place the orders regarding legal decision-making and parenting time pending resolution on remand. *Id.* at *4-5, ¶¶ 25-27, 29. We noted because both parties sought to relocate the children from Arizona, each bore the burden of proof under A.R.S. § 25-408(G). *Id.* at *2, ¶ 14.

¶7  On remand, Father requested an evidentiary hearing and in the month before the hearing filed a motion requesting Judge LeMaire to recuse herself pursuant to Arizona Rule of Family Law Procedure ("ARFLP") 6(f) (in actions remanded from an appellate court the right to a change of judge is renewed if the appellate court requires a new trial or contested hearing and the party seeking a change of judge has not previously exercised the party's right to a change of judge). Judge Cohen denied the motion because ARFLP 6 had been suspended by Arizona Supreme Court administrative order AO2020-197, which limited certain court operations during the pandemic.

¶8 The same day Judge Cohen's ruling was filed, Father requested Judge LeMaire be removed for cause. Judge Cohen found Father had not made a showing that Judge LeMaire was biased or prejudiced against Father and denied the motion.

¶9 The superior court held a four-day evidentiary hearing in May 2021. The court issued findings under A.R.S. §§ 25-403 and -408 and adopted its findings from the July 2019 order, "unless [those findings were] modified" by the court's new order. The superior court found Mother met her burden to show that relocation to New Zealand was in the children's best interests. The court also found Father in contempt for non-payment of child support. Father timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(2) over all issues except contempt. *See infra* ¶¶ 10-12.

**DISCUSSION**

I. Child Support/Contempt

¶10 In its 2019 order, the superior court granted Mother a child support arrearage judgment against Father in the amount of $74,049.96. The court ordered Father to pay $500 per month towards the arrearages in addition to monthly child support of $500 per month. Father appealed, arguing the superior court abused its discretion in entering the judgment for child support arrearages because it erroneously determined he had made no court-ordered payments. *DeCormier*, 1 CA-CV 19-0568 FC, at *4, ¶¶ 25-26. Father argued he had made "several" support payments and that Mother "may have also received some money for support when she closed a joint bank account." *Id.* We affirmed in our 2020 decision, noting there was conflicting testimony and Mother's testimony supported the court's determination that Father had not paid any court-ordered child support. *Id.* at ¶¶ 26-27.

¶11 In December 2020, Mother petitioned the superior court to find Father in contempt for failing to pay child support arrearages. After a contempt hearing consolidated with the 2021 relocation trial, the superior court found Father in contempt of court for refusing to pay his past due child support. The court did not enter another judgment for child support arrearages, stating that the court did not have the information it needed "[t]o properly assess the past due child support under the order from Dubai," including "an accounting of what was due, what has been paid, what the exchange rate was in the different currencies, as well as what the legal rate of interest was in Dubai for the relevant time period."

4

**¶12** In this appeal, Father argues the superior court failed to make appropriate findings giving him credit for child support payments he made in Dubai, and that the original arrearage judgment had been mistakenly calculated using dates predating the decree. According to Father, "the issue before the trial court was 'payments' on arrears so as not to find Father in contempt." We do not have appellate jurisdiction over the 2021 contempt ruling and Father did not raise the issue via special action. We decline to accept special action jurisdiction. *See In re the Marriage of Chapman*, 251 Ariz. 40, 42, ¶ 8 (App. 2021) (noting the "well-established rule in Arizona that civil contempt adjudications are not appealable").

II. Change of Judge

**¶13** Father moved for Judge LeMaire's recusal pursuant to ARFLP 6(f). Judge Cohen denied the motion because ARFLP 6 had been suspended by Arizona Supreme Court administrative order AO2020-197, which limited court operations during the pandemic. The same day Judge Cohen's ruling was filed, Father requested Judge LeMaire be removed for cause. Judge Cohen found Father had not shown that Judge LeMaire was biased or prejudiced against Father and denied the motion.

**¶14** Father argues the superior court abused its discretion by denying both of his motions for a change of judge and we should remand for a new trial.

**¶15** We review the denial of a request for change of judge, whether for judicial bias or as of right, for an abuse of discretion, but interpret court rules de novo. *Coffee v. Ryan-Touhill*, 247 Ariz. 68, 72, ¶ 17 (App. 2019); *Stagecoach Trails MHC, L.L.C. v. City of Benson*, 232 Ariz. 562, 568, ¶ 21 (App. 2013).

**¶16** ARFLP 6(f) provides that in actions remanded from an appellate court, the right to a change of judge is renewed if the appellate court requires a new trial or contested hearing and the party seeking a change of judge has not previously exercised the party's right to a change of judge. Father acknowledges ARFLP 6(f) was suspended by administrative order AO2020-197 during the proceedings after remand, but nevertheless argues the superior court abused its discretion by denying his request for a change of judge as a matter of right.

**¶17** The denial of a request for a change of judge as a matter of right is properly reviewed only by special action. *See Smith v. Mitchell*, 214 Ariz. 78, 79, ¶ 2 (App. 2006). Here, after the court denied Father's request for a change of judge pursuant to ARFLP 6(f), he did not seek special action

relief, and the case proceeded to trial. He therefore "cannot now raise on appeal error in connection with the dishonor of his notice of change of judge." *Taliaferro v. Taliaferro*, 186 Ariz. 221, 224 (1996).

**¶18** Citing *Taliaferro*, Mother argues Father was also required to seek review of the denial of his motion for change of judge for cause by filing a special action. We disagree. In *Taliaferro*, our supreme court decided a party seeking a peremptory change of judge must seek review by way of a special action. 186 Ariz. at 223. The court reasoned, "[o]nce judgment has been entered in a civil action, it is too late in the day to be worrying about who tried the case, **short of true challenges for cause** under [Arizona] Rule [of Civil Procedure] 42(f)(2)[2]." *Id.* (emphasis added). Accordingly, Father may raise the issue of his motion for a change of judge for cause on appeal. *See id.*

**¶19** "In Arizona, a party challenging a trial judge's impartiality must overcome the presumption that trial judges are free of bias and prejudice." *Stagecoach*, 232 Ariz. at 568, ¶ 21 (citations and internal quotation marks omitted). "Judicial rulings alone do not support a finding of bias or partiality without a showing of an extrajudicial source of bias or a deep-seated favoritism." *Id.* The superior court will not grant a change of judge for cause if the request is "based merely on speculation, suspicion, apprehension, or imagination." *Id.* (citation and internal quotation marks omitted).

**¶20** ARFLP 6.1 allows a change of judge for cause when a party establishes, by affidavit, any of the grounds listed in A.R.S. § 12-409(B), including "[t]hat the party filing the affidavit has cause to believe and does believe that on account of the bias, prejudice, or interest of the judge he cannot obtain a fair and impartial trial." A.R.S. § 12-409(B)(5). Judge Cohen found ARFLP 6.1 inapplicable because Father failed to establish by affidavit "even a *prima facie* showing that Judge LeMaire [was] biased against [Father] or that she could not fairly consider the case on remand." Although Father argues "the outcome of this case was already pre-determined against him," he points to nothing in the record that would overcome the presumption that Judge LeMaire was impartial. *See Stagecoach*, 232 Ariz. at 568, ¶ 21. We find no abuse of discretion.

---

[2]     Arizona Rule of Civil Procedure ("Rule") 42(f)(2) is now Rule 42.2 (change of judge for cause), which correlates to ARFLP 6.1 (change of judge for cause).

III.     Relocation Findings

**¶21**          We review the superior court's orders about parenting time, legal decision-making, and relocation for an abuse of discretion. *Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7 (App. 2003); *Murray v. Murray*, 239 Ariz. 174, 176, ¶ 5 (App. 2016). We review conclusions of law and the interpretation of statutes de novo. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). An abuse of discretion occurs when the court commits an error of law or when the record, viewed in the light most favorable to upholding the superior court's decision, does not support the decision. *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999); *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590, ¶ 8 (App. 2018). The superior court's failure to make specific findings on the record as to the best interests of the child is an error of law warranting remand for consideration of the statutory factors. *Baker v. Meyer*, 237 Ariz. 112, 117, ¶ 14 (App. 2015). We review the superior court's factual findings for clear error. *Ahwatukee Custom Ests. Mgmt. Ass'n v. Turner*, 196 Ariz. 631, 634, ¶ 5 (App. 2000). The determination of witness credibility and the resolution of conflicting evidence are functions of the superior court. *Lee v. Lee*, 133 Ariz. 118, 123 (App. 1982).

**¶22**          "Arizona statutes pertaining to legal decision-making and parenting time intersect with those pertaining to relocation." *Murray*, 239 Ariz. at 176, ¶ 6. Section 25-403(A) provides a non-exhaustive list of factors the court "shall" consider when entering parenting time orders consistent with the child's best interests. Section 25-403(B) states that "[i]n a contested legal decision-making or parenting time case, the court shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." Although there is a presumption that equal or near-equal parenting time is in the child's best interests, "[e]qual parenting time . . . may not always be possible, particularly when the parties live in different states or are separated by a considerable distance." *Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 6 (App. 2019). "[T]he court must apply § 25-408(G) and § 25-408(I) when resolving any contested relocation . . . ." *Id.* at 532, ¶ 9.

**¶23**          Section 25-408(G) provides that the court shall determine whether to allow a relocation "in accordance with the child's best interests." "The burden of proving what is in the child's best interests is on the parent who is seeking to relocate the child." *Id.* In assessing the child's best interests, the court must consider "all relevant factors," including the eight factors listed in A.R.S. § 25-408(I). Section 25-408(I)(1) incorporates the factors prescribed under § 25-403. A.R.S. § 25-408(I)(1).

¶24        Here, the superior court made the required § 25-408 findings after considering all of the evidence presented in 2019 and 2021. Noting that § 25-408 required the court to make § 25-403 findings, the court made updated § 25-403 findings.

¶25        Father first argues the court erred by applying the 2005 version of § 25-403 rather than the version in effect at the relevant time periods here. *Cf.* A.R.S. § 25-403 (2005); A.R.S. § 25-403 (2013). He contends that "[a]s a result, the Ruling completely omitted factor (8) regarding child abuse under A.R.S. § 25-403.03." Father did not allege alienation or emotional child abuse on Mother's part until the trial on remand in 2021.

¶26        Section 25-403(A)(8) (2013) requires the court to consider "[w]hether there has been domestic violence or child abuse pursuant to § 25-403.03." "Child abuse may include the infliction of physical injury or emotional damage." *Christopher K. v. Markaa S.*, 233 Ariz. 297, 301, ¶ 17 (App. 2013) (citing A.R.S. §§ 8-201(2)[3]; 13-3623(B), (F)(1)). Here, the superior court specifically made § 25-403.03 findings in its 2021 order. Although the court did not address child abuse in its findings about § 25-403.03, wherein the court found credible Mother's allegations that Father committed domestic violence against her in the UAE, elsewhere in the court's order the court stated it was "not persuaded by the alienation and abuse theories proposed by Father and his experts," and:

> Father provided expert testimony that Mother had alienated the children from him. Although the Court was initially concerned that Mother was alienating the children, it has changed its view given Mother's and her witnesses' testimony, their focus on what was best for the children long-term, and their regular prompts to the girls to maintain contact with their father, even when he does not initiate

---

[3]        Section 8-201(2) provides: "'Abuse' means the infliction or allowing of physical injury, impairment of bodily function or disfigurement or the infliction of or allowing another person to cause serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior and which emotional damage is diagnosed by a medical doctor or psychologist and is caused by the acts or omissions of an individual who has the care, custody and control of a child." There was no evidence in this case that the children had been diagnosed by a doctor or psychologist with emotional damage "as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior." Neither of Father's experts interviewed the children.

contact. The court found the expert's testimony to be unpersuasive . . . .

The superior court considered Father's evidence about parental alienation and his experts' opinions that Mother's actions constituted child abuse and squarely rejected Father's arguments about alienation and child abuse in its 2021 order. Although the court did not specifically cite A.R.S. § 25-403(A)(8), it does not follow that the court failed to consider "[w]hether there has been domestic violence or child abuse pursuant to § 25-403.03," as required by that section, given that it did make § 25-403.03 findings in the 2021 order. The court adequately stated its findings about child abuse and domestic violence on the record, as required by § 25-403(B). *See DeLuna*, 247 Ariz. at 425, ¶ 19 (section 25-403.03 "findings are required by statute to be stated on the record and cannot be presumed or implied") (citing A.R.S. § 25-403(B); *Hart v. Hart*, 220 Ariz. 183, 186-87, ¶ 13 (App. 2009)). We find no abuse of discretion.

IV.    Clearly Erroneous/Unsupported Findings

¶27        Father argues the superior court made numerous findings of fact that were clearly erroneous and against the weight of the evidence at trial. Essentially, he disputes the sufficiency of the evidence supporting the court's relocation order. We review the superior court's factual findings for clear error and leave to the superior court the determination of witness credibility and the resolution of conflicting evidence. *Ahwatukee*, 196 Ariz. at 634, ¶ 5; *Lee*, 133 Ariz. at 123.

¶28        Father first argues the court's findings about child abuse and alienation were incomplete, clearly erroneous, unsupported, and against the weight of the evidence. As noted above, the superior court found Father's experts, who had not interviewed or examined the children or Mother "unpersuasive" on the issues of alienation and child abuse, and found Mother's testimony about her efforts to encourage the children's relationship with Father credible. We will not reweigh the evidence or redetermine witness credibility. *See Lee*, 133 Ariz. at 123.

¶29        Father next argues the superior court's findings about which parent was more likely to allow frequent, meaningful, and continuing contact with the other parent under A.R.S. § 25-403(A)(6) were incomplete, clearly erroneous, unsupported, and against the weight of the evidence. As noted above, the superior court found Mother's testimony that she supported Father's relationship with the children and encouraged regular contact between them credible, including in-person contact when pandemic

restrictions ended. The court further noted that Father had failed to take full advantage of opportunities to have telephonic or video contact with the children. The court found that should Father be designated the primary residential parent, Father intended for the children to engage in reunification therapy and to have no contact with Mother for an extended period of time. Because the record supports the superior court's finding that Mother was more likely to allow frequent, meaningful, and continuing contact between the children and Father, we find no error.

¶30 Father next argues the superior court's finding about whether relocation would allow a realistic opportunity for parenting time with each parent under A.R.S. § 25-408(I)(5) was clearly erroneous and unsupported by the evidence. When discussing this factor, the court did not find that relocation allowed Father a realistic opportunity for parenting time. Instead, the court found, "Unfortunately, given where both parents reside, long distance parenting time will be difficult and costly." This finding is supported by the record, and clearly did not weigh in Mother's favor. However, as only one of many factors the court considered and weighed, it was not dispositive. *See Pollock v. Pollock*, 181 Ariz. 275, 278 (App. 1995) (explaining best interests factors are "weighed collectively," and "no single factor is controlling"). We find no error.

¶31 Father next argues the court's finding that he committed significant acts of domestic violence was not supported by reasonable evidence. In its 2019 ruling, the court found Father had committed acts of domestic violence against Mother, but that the acts were not "significant" enough to preclude joint legal decision-making and ordered joint legal decision-making with Mother having the final say. *See* A.R.S. § 25-403.03(A). To be sure, in the 2021 ruling, when setting forth the procedural history of the case, the court mistakenly stated that in 2019 the court found Father had committed "significant" acts of domestic violence. However, in the 2021 ruling the court again found Father committed domestic violence against Mother but did not make a finding that the acts of domestic violence were significant enough to preclude joint legal decision-making, and again found that joint legal decision-making was in the children's best interests. Accordingly, Father was not prejudiced by the court's misstatement.

¶32 Father next argues the court's finding that he declined Mother's offer to exercise parenting time with the children in Hawaii was not supported by reasonable evidence. In a September 2019 email to Father, Mother suggested Father meet "half way in Hawaii . . . or LA, anywhere mid way feasible to you," and Father's response was "You are kidding

right?" At trial, Father testified he declined the offer because he was "not looking for vacation time." We find no error.

¶33 Father next takes issue with the court's findings about § 25-408(I)(2) ("Whether the relocation is being made or opposed in good faith and not to interfere with or to frustrate the relationship between the child and the other parent or the other parent's right of access to the child."). The court found:

> Although the Court is frustrated that Mother relocated the children first from Dubai to Arizona and then from Arizona to New Zealand as both moves make it difficult for Father to establish a normal parent child relationship with the children, Mother had moved in an effort to support her children and provide them with the best life she can. Given that Mother's relationship with her new husband began in Dubai and has lasted a number of years, the Court finds that she relocated in good faith to have a safe, stable, and supportive place to live and raise her children.
>
> Father's request to relocate the children to Massachusetts is purely for his benefit so that it will be easier for him to have parenting time with the children and reduce his child support obligation. Although the parties may have met in Massachusetts, they did not live there with the children nor does it appear that they had any intent to return there. The Court questions whether Father will relocate again should he obtain more lucrative employment as a pilot as it does not appear that he actually intended to reside for a prolonged period of time in Massachusetts.

The court's § 25-408(I)(2) findings were based on the court's assessment of the parties' credibility. We will not reweigh the evidence or redetermine witness credibility. *See Lee*, 133 Ariz. at 123.

¶34 Father next argues the court's partial finding under § 25-408(I)(3) that "[d]ue to [the children's] current grades in school, it may be academically disadvantageous for them to move now as the transition from the New Zealand school system to the one in Massachusetts be [sic] challenging" was unsupported by the record. Similarly, Father argues the court's finding under § 25-408(I)(8) that "[r]elocating the children from New Zealand to Massachusetts or back to Arizona would disrupt their schooling and would result in them being unstable" was unsupported by the record.

¶35        The children attended a Catholic high school in New Zealand and were in grades 9 and 10 (the first and second years of high school), respectively. The school, which followed a New Zealand academic calendar (February to end of November), was meeting the children's needs and they loved their school. To be sure, Mother testified that the children had always done well academically and had transitioned well in previous moves. But in discussing the advantages of New Zealand vs. Massachusetts for improving the children's quality of life under § 25-408(I)(3), in addition to finding it "may" be academically disadvantageous to the children to move to Massachusetts, the court also found: "[l]iving in New Zealand, will provide the children with a loving, supportive extended family and will allow them to finish the New Zealand version of high school." The record supports the court's § 25-408(I)(3) finding. And, regarding § 25-408(I)(8), besides finding that the children's schooling would be disrupted if they were relocated to Massachusetts, the court also found "choosing New Zealand allows . . . the children to remain with their primary parent, with whom they have been thriving for years. Massachusetts would require the children to start in a different school system and have them live with a parent that they would prefer to just visit over breaks and who has never been a hands on, active parent to them." The court's § 25-408(I)(8) finding was not clearly erroneous.

¶36        Father next argues the court's finding under § 25-408(I)(4) that Mother and her husband would comply with the court's parenting time order was unsupported by the record. The court found, "[t]he court believes that Mother and her husband will comply with the court's parenting time order. Over the past couple of years, they have attempted to negotiate mutually acceptable parenting time options so that Father could see the children." The record supports this finding.

¶37        Father argues the court's finding under § 25-408(I)(6) ("[t]he extent to which moving or not moving will affect the emotional, physical or developmental needs of the child") that he never actively parented the children was clearly erroneous. We disagree. E.C. told the court-appointed advisor that Father was frequently absent when the family lived together in Dubai, and after the divorce the children spent "like one (night) in two weeks" with Father in his apartment in Dubai which was in the same building as the children's and Mother's apartment. He did not help the children with their homework or make their meals. Under the UAE divorce decree, Mother was the named "custodian" of the children and was in charge of their day-to-day care. Besides finding that Father had not actively parented the children, the court found it would be detrimental to the children to relocate them to Massachusetts with Father "[g]iven Father's

manipulation of them from a young age where he blamed arguments on Mother and told the children he was going to 'win' them." Because the record supports the court's § 25-408(I)(6) finding, we find no error.

V.       Attorneys' Fees on Appeal

**¶38**          Mother and Father both request attorneys' fees and costs pursuant to A.R.S. § 25-324. In the exercise of our discretion, we decline to award attorneys' fees to either party. We award Mother costs upon compliance with ARCAP 21.

## CONCLUSION

**¶39**          For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:          HB